[No. 18807-1-I.   Division One.   May 16, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILLIP L. MOTON, *Appellant.*

---

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg R. Hubbard, Assistant Chief Deputy,* and *Peter Goldman, Special Deputy,* for respondent.

WEBSTER, J.—Phillip Leslie Moton appeals his conviction and sentencing for the crimes of first degree robbery, first degree burglary, and second degree robbery. We affirm.

## FACTS

On March 17, 1986, at approximately 11:30 p.m., Dana Duesenberg, while walking home from Houlihan's Restaurant in Bellevue, Washington, was robbed. Moton, armed with a knife, surprised Duesenberg as she walked past a driveway and attempted to drag her toward a nearby pickup truck. Duesenberg escaped during the ensuing struggle, leaving behind her jacket and a purse that contained her checkbook, cash machine card, apartment keys, and a change of address form listing her current address.

After she escaped, Duesenberg gave a description of Moton to the police and then returned to her apartment

which she shared with Kari Furse. Both women feared additional contact with Moton and moved furniture in front of the apartment door to act as a barricade. Nevertheless, shortly thereafter Moton forced open the front door of the apartment and entered. When Furse attempted to call the police, Moton knocked the phone from her hand with his fist. Moton then threatened Furse with his fist and demanded to know where her purse was located. She replied that her purse was in the bedroom. While Moton was in the bedroom, Furse telephoned the police. Moton then left the apartment with Furse's purse.

Police officers, arriving at the scene of the crime, saw a rust–colored pickup truck leaving the apartment complex. It was driven by a man who matched Moton's description. Moton was stopped by the police, and Duesenberg and Furse identified him as the man who had entered their apartment. Duesenberg further identified Moton as the man who had robbed her earlier that evening. Furse's purse and Duesenberg's keys and some of her checks were found in Moton's truck. Duesenberg's change of address slip and cash machine card were also found on Moton's person. Duesenberg's coat and purse were found near Moton's residence.

The State charged Moton with one count of first degree robbery (count 1, involving the first robbery of Duesenberg), one count of first degree burglary (count 2, the burglary and assault of Furse within the apartment), and one count of second degree robbery (count 3, the robbery of Furse within the apartment). The State also charged that Moton was armed with a deadly weapon during the commission of the first degree robbery.

During the course of the trial both Duesenberg and Furse testified. Both described in detail the events of the night of March 17, through the early morning hours of March 18. Both made in–court identifications of Moton as the man who was involved in those events. The jury returned guilty verdicts on all three counts and found by special verdict

that Moton was armed with a deadly weapon during the commission of the first degree robbery.

*Moton* was sentenced, based upon his offender score, to 195 months for count 1, 116 months for count 2, and 84 months for count 3. The sentences were ordered to run concurrently. Moton's offender score was calculated using Moton's previous convictions and the three current convictions as involving separate crimes. However, the State indicated in its presentencing report that Moton would have the same offender score even if the first degree burglary and second degree robbery were considered as involving the same course of criminal conduct.

On appeal, Moton claims that the "to convict" instruction on the charges of first degree burglary denied him his constitutional right to a unanimous jury verdict and denied his constitutional right to be tried only for an offense for which he is charged. Moton's argument rests on the fact that the "to convict" instruction failed to name Furse as the victim assaulted during the burglary. Further, Moton argues the sentencing court erred when it considered the three crimes as separate convictions in calculating his offender score.

### INSTRUCTION ERROR

The "to convict" instruction for the first degree burglary charge did not specify the person Moton allegedly assaulted during the commission of the burglary. The instruction allowed the jury to find Moton guilty of first degree burglary if it found that Moton "assaulted a person" while he was in the apartment.

The Washington State Constitution, article 1, sections 21 and 22, guarantees the right of trial by jury to a criminal defendant, which includes the right to jury unanimity. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984); *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). Additionally, the sixth amendment to the United States Constitution and article 1, section 22 of the Washington Constitution guarantee criminal defendants the right to be

informed of the nature of the charges against them. Thus, the Washington Supreme Court has stated that a defendant cannot be tried for an unstated offense. *State v. Valladares,* 99 Wn.2d 663, 671, 664 P.2d 508 (1983).

In *Stephens* the "to convict" instruction allowed the defendant to be found guilty if he assaulted one *or* another victim. The court found that instructing the jury in the disjunctive violated the defendant's constitutional right to a unanimous verdict because the instruction suggested that either victim could have been assaulted. *Stephens,* at 190–91. In *State v. Brown,* 45 Wn. App. 571, 726 P.2d 60 (1986), Brown and 12 coconspirators were charged with conspiracy to commit theft. The "to convict" instruction, however, failed to name the coconspirators and allowed Brown to be found guilty if he "agreed with one or more persons" to commit the crime. We found that the instruction, which allowed Brown to be convicted for conspiracy other than one charged, was improper because Brown had to be informed of the charges against him and could not be tried for an unstated offense. *Brown,* at 576.

Moton argues under *Stephens* and *Brown* that the "to convict" instruction for the first degree burglary denied him his constitutional right to a unanimous jury and his right to be tried only for a stated offense. However, assuming that the "to convict" instruction was in error, we feel that any error was harmless beyond a reasonable doubt.

An error of constitutional magnitude is harmless if the reviewing court may conclude, based upon the record, that the error was harmless beyond a reasonable doubt. *State v. Stephens, supra* at 190; *State v. Stewart,* 35 Wn. App. 552, 555, 667 P.2d 1139 (1983). *See State v. Hall,* 95 Wn.2d 536, 539–40, 627 P.2d 101 (1981), the court affirming a defendant's assault conviction even where the "to convict" instruction was phrased in the disjunctive, finding that any error was harmless beyond a reasonable doubt.

In the present case, the State's amended information specifically charged Moton with an assault on Furse during the burglary based upon Moton's "knocking" the telephone

from Furse's hand as she tried to call for assistance. Furse's and Duesenberg's detailed testimony regarding the burglary, the prosecution's opening and closing statements, and Moton's own arguments indicated to the jurors that they were to consider, for the purposes of the burglary charge, Moton's assault of Furse and not Duesenberg. Beyond a reasonable doubt, Moton was tried of the crime for which he was charged and the jury was unanimous in its conviction based upon the substantial evidence of Moton's assault of Furse during the burglary. The trial court's oversight in not specifying Furse's name in the "to convict" instruction was a technical error which was harmless beyond a reasonable doubt.

## Sentencing Error

Moton also argues that his sentence was improperly calculated by the trial court. He argues that under RCW 9.94A.400(1)(a) the three crimes for which he was convicted should have been treated as one crime in determining his presumptive range because the acts encompassed the same criminal conduct.

Former RCW 9.94A.400(1)(a)[1] states:

> Except as provided in (b) of this subsection, whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. *Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history.*

(Italics ours.)

In *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987), the court stated that "crimes involving multiple victims must be treated separately" for the purposes of

---

[1]Effective July 26, 1987, RCW 9.94A.400(1)(a) was amended to provide that crimes involving separate victims do not involve the "same criminal conduct". In this case, Moton was sentenced on June 30, 1986; therefore, former RCW 9.94A.400 applies.

former RCW 9.94A.400(1)(a). Recently, in *State v. Collicott,* noted at 50 Wn. App. 1046 (1988), we considered whether three crimes involved the same criminal conduct. In that case the defendant burglarized a store, raped an employee, and later kidnapped that employee. We found that the crimes encompassed separate criminal conduct because the criminal objective of each crime was realized before the defendant set off on a new course of action, and because the burglary was a crime committed against the store owner and thus involved a separate victim.

In this case, Moton's first degree robbery of Duesenberg involved a separate course of criminal conduct from the crimes committed by Moton at Duesenberg's and Furse's apartment. The first degree robbery involved Duesenberg alone, the later burglary and robbery involved Furse. Further, the criminal objective of the first degree robbery was realized prior to Moton's burglary of, and robbery within, the apartment.

Because the first degree robbery involved separate criminal conduct, we find it unnecessary to consider whether the first degree burglary or second degree robbery could be considered as involving a similar course of criminal conduct. As the State indicated in its presentencing report, counting the first degree burglary and second degree robbery as one conviction would not have altered the defendant's offender score.

We affirm.

GROSSE and PEKELIS, JJ., concur.

Reconsideration denied August 29, 1988.

Review denied by Supreme Court November 29, 1988.