[No. 9848-6-III.  Division Three.  June 7, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. BILLY WAYNE WORL, *Appellant.*

---

*Michael F. Keyes* and *Keyes & Schrawyer*, for appellant.

*Donald C. Brockett, Prosecuting Attorney*, for respondent.

GREEN, J.—Billy Worl appeals his convictions of attempted second degree murder and malicious harassment. He contends the court erred by (1) denying his motion for a change of venue because of pretrial publicity; (2) admitting statements made by him before he was given his *Miranda* warnings; (3) sentencing him for both convictions; (4) calculating his offender score; and (5) imposing an exceptional sentence. We affirm.

At trial, the parties testified as follows: At approximately 2 a.m. on July 30, 1988, Billy Worl and Tim Carver were "panhandling" in a Safeway parking lot in Spokane. Mr. Worl approached Mr. Hill, a black man, who was sitting in his car. Mr. Worl referred to Mr. Hill as a "Blood" several times to which Mr. Hill responded by asking if he was one too. Mr. Worl responded, "No, I am not and you mother fuckers should all go back to Africa where you belong."[1] Both men thought the other had a gun. According to Mr. Hill, Mr. Worl kicked the side of his car and told him to "[g]et out here." Mr. Hill reached for a conduit tube on the

---

[1] Mr. Worl testified he said all "Bloods should go back to Africa with the rest of the monkeys."

floor and got out of the car. Mr. Worl rushed Mr. Hill, the tube falling from Mr. Hill's hand. Just then, Mr. Carver hit Mr. Hill from behind. Simultaneously, Mr. Worl pulled a knife and began "slashing" Mr. Hill. Mr. Hill threw Mr. Carver to the ground, then stumbled about 10 feet and fell. Mr. Hill stated when he looked up he saw Mr. Worl and Mr. Carver coming at him. According to Mr. Hill, Mr. Carver jumped him and held him down while Mr. Worl continued slashing him. Mr. Hill kicked his feet at Mr. Worl in order to protect himself.

Several witnesses came running when Mr. Hill called for help and Mr. Worl and Mr. Carver ran away. Several witnesses observed one of the men return, pick up Mr. Hill's hat and conduit tube and then run off. One of the witnesses wrote down Mr. Worl's license plate number and someone called for paramedics. Mr. Hill received five cuts to his body and all but one required 20 stitches or more.

Mr. Carver and Mr. Worl were arrested later that evening at Mr. Carver's home. Mr. Worl was charged with attempted first degree murder, first degree assault and malicious harassment. A jury trial resulted in convictions for attempted second degree murder and malicious harassment. He appeals.

First, Mr. Worl contends the court erred in denying his motion for change of venue due to pretrial publicity thereby depriving him of a fair trial. We find no error.

■■ To obtain a change of venue in a criminal case, the defendant must demonstrate that pretrial publicity resulted in an apparent probability of prejudice. *State v. Gilcrist,* 91 Wn.2d 603, 609, 590 P.2d 809 (1979); *State v. Wilson,* 16 Wn. App. 348, 350, 555 P.2d 1375 (1976). The decision to grant or deny the motion is within the trial court's discretion, which will only be overturned upon showing a manifest abuse. *State v. Rupe,* 108 Wn.2d 734, 750, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 934, 108 S. Ct. 2834 (1988); *Wilson,* at 350–51. Adverse pretrial publicity in a community may create a

presumption that jurors claiming they can be impartial should not be believed; whether a presumption arises depends upon the totality of the circumstances. *Patton v. Yount,* 467 U.S. 1025, 1031–32, 81 L. Ed. 2d 847, 104 S. Ct. 2885 (1984); *Rupe,* at 751. Consideration should also be given to the following factors:

> (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.[2]

*State v. Crudup,* 11 Wn. App. 583, 587, 524 P.2d 479, *review denied,* 84 Wn.2d 1012 (1974); *Rupe,* at 752.

The articles claimed to create the prejudice appeared shortly after the incident. They referred to Mr. Worl and his companion as "skinheads", "racist skinheads", or "neo-Nazi skinheads". Although Spokane's chief of police was quoted as saying the police would not tolerate skinhead or neo–Nazi violence against Spokane's minorities, he did not refer to Mr. Worl by name. At trial, the State introduced evidence of Mr. Worl's neo–Nazi philosophy to prove the attack was racially motivated. Mr. Worl testified he was proud to be a "skinhead" and he believed in separation of the races. Substantially all of the other facts related in the newspaper articles were presented at trial. Thus, the jury considered the very evidence Mr. Worl now claims was inflammatory and prejudicial. Most jurors only vaguely

---

[2]Mr. Worl argues this court should consider the guidelines for reporting criminal proceedings compiled by the Bench–Bar–Press Committee of Washington in determining the prejudicial effect of the articles. Although the guidelines do not carry the force of law, they may, in certain instances, be due process violations. *State v. Stiltner,* 80 Wn.2d 47, 52, 491 P.2d 1043 (1971). We have considered them to the extent they are applicable.

recalled the incident and review of the approximately 450-page record of voir dire reflects great care was taken to select a fair and impartial jury. Based on our review of this record, we conclude there was no apparent probability of prejudice to Mr. Worl and the motion for a change of venue was properly denied.

Second, Mr. Worl contends the court erred in admitting certain statements he made at the time of his arrest because they were made before he was given *Miranda* warnings. He argues the court's admission of his statements he "hoped the fucking nigger died" and that it was his intention to kill Mr. Hill is inconsistent with its later ruling refusing to admit his response to police questions about ownership of a bloodstained T-shirt.[3] We find no error.

█ The burden is on the State to show by a preponderance of the evidence a defendant's statements were voluntarily made, *State v. Braun,* 82 Wn.2d 157, 162, 509 P.2d 742 (1973); this determination must be supported by substantial evidence. *State v. Ng,* 110 Wn.2d 32, 37, 750 P.2d 632 (1988). *Miranda* warnings are necessary when a suspect is subject to custodial interrogation or its functional equivalent, *State v. McIntyre,* 39 Wn. App. 1, 6, 691 P.2d 587 (1984), *review denied,* 103 Wn.2d 1017 (1985); "[t]his is not to say . . . all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Rhode Island v. Innis,* 466 U.S. 291, 299, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). Interrogation refers to express questioning, words or actions on the part of the police other than those attendant to arrest and custody, that are likely to elicit an incriminating response. *Innis,* 466 U.S. at 301. Interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. *Innis,* 466 U.S. at 300. A defendant's incriminating statement, not in response to an officer's question, is

---

[3]While Mr. Worl was being taken into custody, another officer's search of the house resulted in finding a bloodstained T-shirt. When the officer showed Mr. Worl that T-shirt, he confirmed it was his. This statement was ruled inadmissible.

admissible. *State v. Bradley,* 105 Wn.2d 898, 904, 719 P.2d 546 (1986).

Here, the suppression hearing reflects that at the time Mr. Worl was being arrested, an officer cautioned him several times "not to say anything" until he was advised of his constitutional rights. Nevertheless, Mr. Worl continued to volunteer statements about the incident. Mr. Worl testified he knew he did not have to make any statements to the officers and that he volunteered the statements to which he now objects. The only statement not volunteered was his response to the officer's question regarding ownership of the T-shirt. This statement was suppressed. There is no error.

Third, Mr. Worl contends imposing separate sentences for each conviction was double jeopardy. We disagree.

The constitutional guaranty against double jeopardy protects a defendant from a second trial for the same offense and against multiple punishments for the same offense. *Whalen v. United States,* 445 U.S. 684, 63 L. Ed. 2d 715, 100 S. Ct. 1432 (1980); *State v. Vladovic,* 99 Wn.2d 413, 423, 662 P.2d 853 (1983). For purposes of double jeopardy, the offenses must be the same in law and in fact. *Vladovic,* at 423; *State v. Roybal,* 82 Wn.2d 577, 581, 512 P.2d 718 (1973). If there is an element in each offense which is not included in the other and if proof of one offense would not necessarily prove the other, the offenses are not the same and double jeopardy does not prevent convictions or punishment for both. *Vladovic,* at 423; *Roybal,* at 581. Review of a trial court's sentence will not be reversed unless a clear abuse of discretion or misapplication of the law is shown. *State v. Elliott,* 114 Wn.2d 6, 17, 785 P.2d 440 (1990).

Attempted murder in the second degree requires an intent to cause the death of another and a substantial step toward that goal. RCW 9A.32.050(1), 9A.28.020(1). Malicious harassment, on the other hand, requires an intent to intimidate or harass a person because of that person's race coupled with physical injury to the person or his property

or reasonable fear of harm to the person or his property. RCW 9A.36.080. The intent required for each offense is different—intent to cause death contrasted with an intent to harass. Thus, one may commit attempted second degree murder without committing malicious harassment. The two crimes are separate and may be punished separately.[4]

Fourth, Mr. Worl contends the court erred in using both offenses in calculating his offender score. We disagree.

■ In sentencing for two or more current offenses, the sentence range is determined by using all other current convictions as if they were prior convictions for purposes of calculating the offender score, unless they encompass the same criminal conduct. RCW 9.94A.400(1)(a). If the offenses encompass the same criminal conduct, they are treated as one crime. RCW 9.94A.400(1)(a); *State v. Moton,* 51 Wn. App. 455, 460, 754 P.2d 687, *review denied,* 111 Wn.2d 1026 (1988). The same deference given the trial court in sentencing is also given in its determination of the offender score. *State v. Burns,* 114 Wn.2d 314, 788 P.2d 531 (1990).

RCW 9.94A.400(1)(a) provides: "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." In making this determination, the court must focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next—in other words, whether the two crimes are intimately related or connected. *State v. Dunaway,* 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987); *State v. Moton, supra* at 461. Part of the analysis will often include whether one crime furthered the

---

[4]Mr. Worl's reliance on *State v. Lass,* 55 Wn. App. 300, 777 P.2d 539 (1989) is misplaced. In that case, taking a motor vehicle without permission required the vehicle not belong to the defendant and be taken intentionally without the owner's permission; second degree vehicle prowling required unlawful entering/remaining in a vehicle with intent to commit a crime. Mr. Lass unlawfully entered a truck not belonging to him in order to take it without permission. Hence, the two crimes merged.

other, and if the time and place of the crimes remained the same. *Dunaway,* at 215. Additionally, when accompanying offenses depend on each other to obtain a higher degree for each one, they may be viewed as the same criminal conduct. *State v. Collicott,* 112 Wn.2d 399, 406, 771 P.2d 1137 (1989).

Here, the original conduct reflected Mr. Worl intended to harass Mr. Hill as evidenced by his language. The crime of malicious harassment was complete when Mr. Worl assaulted Mr. Hill when he exited his car. The repeated slashing evidenced more than an intent to harass by causing physical injury, but evidenced an intent to kill Mr. Hill. We find Mr. Worl's offender score was properly computed.

Fifth, Mr. Worl contends the court erred in imposing exceptional sentences, each to run consecutively.

In reviewing an exceptional sentence, the court must determine whether the reasons given are supported by the record. RCW 9.94A.210(4); *State v. McAlpin,* 108 Wn.2d 458, 462, 740 P.2d 824 (1987). The reviewing court must determine as a matter of law whether the court's reasons justify the exceptional sentence. RCW 9.94A.210(4)(a). The reasons must be "substantial and compelling" and the sentencing judge's factual determination will be upheld unless "clearly erroneous". RCW 9.94A.120(2); *McAlpin,* at 462–63.

The court considered the following factors:

A. The defendant's conduct constituted multiple incidents or injuries in that a number of injuries were inflicted on the victim, Ray Hill, one very serious, by the defendant with a knife.

B. The defendant's conduct constituted deliberate cruelty in that this was an attack on the victim by two people and what appears to be a persistence in the attack because as the victim attempted to run he was chased and again attacked. An indication of the deliberate cruelty is the taking of the victim's piece of conduit and his hat from the scene of the attack as if they were trophies.

C. The future dangerousness of the defendant as evidenced by the testimony of Dr. Thomas McKnight who had examined him at the request of the defense, and indicated that he was impulsive and had an inability to control himself.

D. The fact that this was not the "typical" Malicious Harassment case in that the injuries were substantial and the conduct of the defendant [was] beyond what could normally be expected to occur in a typical case.

As to the first factor, Mr. Worl asserts multiple wounds, as a matter of law, are not a substantial and compelling reason for the sentence. He argues there must be a temporary break between the first and second criminal act to constitute a multiple incident.

■ Both multiple incidents and injuries are considered aggravating factors. *See State v. Dunaway, supra* (multiple incidents); *State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) (multiple incidents); *State v. Franklin,* 56 Wn. App. 915, 786 P.2d 795 (1989) (multiple stab wounds); RCW 9.94A.390(2)(c)(i). The court stated in the alternative that the conduct constituted multiple incidents or multiple injuries. We find the multiple stab wounds inflicted by Mr. Worl are more properly considered multiple injuries and the court was correct in considering those injuries as an aggravating factor.

As to the second factor, deliberate cruelty, Mr. Worl argues there is insufficient evidence to support this finding. He also argues returning to take the victim's hat and pipe conduit was only a spontaneous act and as a matter of law cannot be characterized as deliberately cruel.

■■ Mr. Worl failed to assign error to the court's findings, and thus they are verities. *State v. Harmon,* 50 Wn. App. 755, 757, 750 P.2d 664, *review denied,* 110 Wn.2d 1033 (1988). In any event, the findings are supported by the record and are not clearly erroneous. Whether the act of taking Mr. Hill's hat and pipe constitutes deliberate cruelty is immaterial. The focus of the court's finding is on the concerted attack and chasing Mr. Hill when he attempted to flee. Conduct leading to multiple injuries, in itself an aggravating factor, may also evidence deliberate cruelty. *State v. Dennis,* 45 Wn. App. 893, 728 P.2d 1075 (1986) (gang rape constitutes deliberate cruelty), *review denied,* 108 Wn.2d 1008 (1987). There is no error.

■ As to the third factor, future dangerousness, Mr. Worl asserts impulsiveness and lack of self-control, standing by themselves, do not support a finding of future dangerousness. However, Mr. Worl cites no authority for this position. RAP 10.3(a)(5). Moreover, uncontrollable anger and impulsiveness, coupled with gratuitous violence, justifies an exceptional sentence. *State v. Harmon, supra* at 762. Mr. Worl's own expert testified he was impulsive and acted without regard to the welfare of others. He was diagnosed as manipulative and untrustworthy, with an antisocial personality. Mr. Worl's history of impulsive behavior, coupled with the violence he demonstrated he was capable of, justified a finding of future dangerousness.

Finally, we find no merit to Mr. Worl's assertion unsupported by argument with respect to the last factor, the atypical conduct associated with malicious harassment. RAP 10.3(a)(5). No error was assigned to this finding. In any event, the other findings relating to aggravation are valid, substantial and support the exceptional sentence. *State v. Fisher,* 108 Wn.2d 419, 739 P.2d 683 (1987); *State v. Crutchfield,* 53 Wn. App. 916, 771 P.2d 746 (1989).

Affirmed.

MUNSON, C.J., and THOMPSON, J., concur.

After modification, further reconsideration denied July 12, 1990.

Review granted at 115 Wn.2d 1022 (1990).