[Nos. 57429-4, 57453-7, 57472-3.   En Banc.   November 7, 1991.]

THE STATE OF WASHINGTON, *Petitioner*, v. JACK A. BARNES, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM VICTOR SMITH, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. BILLY WAYNE WORL, JR., *Petitioner*.

*Rita J. Griffith* of *Washington Appellate Defender Association*, for petitioner Smith.

*Michael F. Keyes*, for petitioner Worl.

*Jack A. Barnes*, pro se, and *Philip J. Lynch* and *Dennis Benjamin* of *Washington Appellate Defender Association*, for respondent Barnes.

*Norm Maleng, Prosecuting Attorney for King County*, and *Theresa L. Fricke, Senior Deputy; Donald C. Brockett, Prosecuting Attorney for Spokane County*, for the State.

UTTER, J. — This is a consolidated review of three criminal cases. Each defendant received a sentence exceeding the standard range under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. The trial court listed future dangerousness as an aggravating factor justifying the exceptional sentence in each case. In *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990), we held future dangerousness may be considered as an aggravating factor justifying an exceptional sentence in sexual offense cases. Here, we are asked to extend future dangerousness to nonsexual offense cases. We decline to do so and hold future dangerousness is not an appropriate factor justifying an exceptional sentence in nonsexual offense cases.

### DEFENDANT BARNES

Jack Barnes was convicted of first degree murder and first degree assault. *See State v. Barnes*, 58 Wn. App. 465, 794 P.2d 52 (1990). The trial court imposed an exceptional sentence of 45 years and listed three reasons as justification: (1) commission of the crime in the presence of young children;[1] (2) defendant's pattern of assaults and threats against the victim, and (3) defendant's demonstration of "a complete lack of remorse, willingness to perjure himself, and a general obsessive personality that make him extremely dangerous to any family members alive upon his release from DOC." 58 Wn. App. at 474. On appeal, the State conceded the invalidity of the second reason. 58 Wn. App. at 474. Thus, the Court of Appeals only reviewed the first and third reasons. The court held the first reason was valid, but concluded the grounds for finding future dangerousness were insufficient. 58 Wn. App. at 476-77.

In Barnes' case, two of the three reasons were found invalid. The Court of Appeals found it could not conclude the trial court would have imposed the same sentence had it considered only the first reason, and therefore remanded the case for resentencing. 58 Wn. App. at 477.

### DEFENDANT SMITH

William Smith was convicted of second degree assault. *See State v. Smith*, 58 Wn. App. 621, 794 P.2d 541 (1990). The trial court imposed an exceptional sentence of 90 months. 58 Wn. App. at 624. The trial court listed six reasons in support of its imposition of the exceptional sentence: (1) defendant's violation was more serious than that typically associated with the crime; (2) defendant had a history of violence not reflected in the offender score; (3) the crime was committed while defendant was on parole and occurred less than 2 years after his release from prison on another second degree assault conviction; (4) the multiple offense policy of RCW 9.94A.400 resulted in a

---

[1] Barnes murdered his wife and attempted to murder her sister. Four children were in the home at the time, hiding in another room.

sentence which was too lenient; (5) defendant refused to accept responsibility, blamed others, and had little remorse; and (6) defendant's psychological problems are not likely to be treated successfully. 58 Wn. App. at 624-25. The Court of Appeals invalidated the third and fourth reasons, found the other four reasons were valid, and affirmed the sentence. 58 Wn. App. at 628-29.

## DEFENDANT WORL

Billy Wayne Worl, Jr., was convicted of second degree attempted murder and malicious harassment. *See State v. Worl*, 58 Wn. App. 443, 794 P.2d 31 (1990). The trial court imposed an exceptional sentence by sentencing Worl to the maximum term for each offense and requiring the sentences to run consecutively. The court listed four reasons as justification for the exceptional sentence: (1) multiple incidents or injuries; (2) deliberate cruelty; (3) future dangerousness as established by expert testimony; and (4) conduct exceeding that normally associated with malicious harassment. 58 Wn. App. at 451-52. The Court of Appeals found Worl's impulsive behavior and antisocial personality, together with his demonstrated propensity for violence, justified a finding of future dangerousness. The Court of Appeals affirmed the sentence. 58 Wn. App. at 453.

## I

In *State v. Pryor, supra*, we set forth a 2-prong test to determine whether the imposition of an exceptional sentence based on future dangerousness was justified: criminal history and amenability to treatment. 115 Wn.2d at 454. The sentencing alternative created for sexual offenders in RCW 9.94A.120(7) supports our decision in *Pryor*. However, neither prong of the *Pryor* test is sufficient to justify an exceptional sentence in nonsexual offense cases. When it enacted the SRA, the Legislature constructed an elaborate scheme to govern criminal sentencing. Under this scheme, an offender's criminal history is taken into account in determining the presumptive

sentence. Then certain goals are set forth which govern the sentencing judge's discretion in imposing sentences.

## A

■ Criminal history[2] is already taken into account in RCW 9.94A.360 (computation of offender score), and should not be reconsidered in imposing a sentence outside the standard range. We have held that any factor used in calculating the presumptive range under RCW 9.94A.320 may not then be relied upon as an aggravating factor. *State v. Batista*, 116 Wn.2d 777, 788, 808 P.2d 1141 (1991); *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). "A reason offered to justify an exceptional sentence is sufficient only if it 'take[s] into account factors other than those which are necessarily considered in computing the presumptive range for the offense.' " *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987) (citing *Nordby*, at 518). *See also State v. Armstrong*, 106 Wn.2d 547, 550-51, 723 P.2d 1111 (1986).

Our decision in *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978) is analogous. In *Workman*, defendants were charged with attempted first degree robbery while armed with a deadly weapon, which was also a firearm within the meaning of RCW 9.41.025.[3] This section was known as the enhanced penalty provision of the uniform firearms act. It required the sentencing judge to impose an additional minimum sentence of 5 years where a defendant has attempted to commit a felony while in possession of a firearm. Since, in *Workman*, possession of a firearm was an element of the crime charged (first degree robbery while

---

[2]The SRA defines "criminal history" as "the list of a defendant's prior convictions, whether in this state, in federal court, or elsewhere." Former RCW 9.94A.030(10)(a). It also includes the location and length of time of incarceration and of probation.

[3]RCW 9.41.025 has since been repealed. Laws of 1981, ch. 137, § 38; Laws of 1982, ch. 10, § 17; Laws of 1983, ch. 2, § 20; and Laws of 1984, ch. 209, § 31, all effective July 1, 1984.

armed with a deadly weapon), it was already taken into account under the statute's penalty provision. Therefore, the trial court held that RCW 9.41.025 had no application to the crime of attempted first degree robbery and could not then be considered in extending the sentence. This court affirmed: "In the absence of clear legislative intent to the contrary, sound statutory construction leads to the conclusion RCW 9.41.025 cannot be applied so as to impose an additional penalty." 90 Wn.2d at 454. Factors essential to the determination of the punishment, such as criminal history, cannot then be considered in enhancing the punishment.

Finally, the "real facts" concept excludes consideration of either uncharged crimes or crimes that were charged but later dismissed. *See State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987). The real facts concept is based on RCW 9.94A.370(2) which states in pertinent part:

> Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e).

(RCW 9.94A.390 sets forth aggravating factors which may be listed as justification for departures from the sentencing guidelines.) Because future dangerousness punishes an offender for a crime which the State has neither charged nor proven, it cannot, and should not, be considered in imposing a sentence.

The real facts concept satisfies the accountability purpose of the SRA, as well as the purpose of promoting respect for the law by providing punishment which is just. *See* RCW 9.94A.010.

> Defendants will be held accountable for what they have been convicted of, but not for crimes that the prosecution either could not or chose not to prove. . . . This policy . . . will go far to bring integrity to the process of determining guilt and imposing punishment, and thus fulfill the purpose of the Sentencing Reform Act . . ..

D. Boerner, *Sentencing in Washington* 9-18 (1985).

Thus, the history and language of the SRA itself bars the sentencing judge from considering criminal history and unproven or uncharged crimes as a reason for imposing an exceptional sentence.

### B

When it enacted the SRA, the Legislature emphasized other goals, such as proportionality between the crime committed and the punishment imposed, and uniform sentences among offenders of similar crimes. RCW 9.94A.010; D. Boerner, at 2-1. The Legislature retained some aspects of the rehabilitative ideal by creating the sentencing alternative for sexual offenders. *See* RCW 9.94A.120(7).[4]

■ Because the SRA distinguishes between sexual and nonsexual offenses, there is authority for this court to consider a defendant's amenability to treatment in sexual offense cases. At the time the SRA was enacted, the Superior Court Judges Association recommended sex offenders be treated differently from other offenders due to their belief that a sex offender's behavior was compulsive and likely to continue without treatment. *See* D. Boerner, at 8-2. The options created for sexual offenders were authorized "because it was believed that for these groups of offenders, requiring participation in rehabilitation programs is likely to prove effective in preventing future criminality." D. Boerner, at 2-37. Nonsexual offenses, on the other hand, usually stem from other problems, such as financial need. *See* J. Murphy, *Retribution, Justice and Therapy* 104-06 (1979).

In sexual offense cases, it may be possible to discuss amenability to treatment in terms of "similar criminal acts" without looking at prior convictions. *See State v. Pryor*, 115 Wn.2d 445, 451-55, 799 P.2d 244 (1990), and cases discussed therein (concerning "similar acts of sexual deviancy"). However, it is much more difficult to focus on similar criminal acts in nonsexual cases. In calculating the offender's score for nonsexual offenses, the sentencing

---

[4]Exceptions also exist for first-time offenders. RCW 9.94A.120(5).

judge looks at criminal history and the seriousness level of the crime. The latter is based on the statutory definition and *class* of the crime, rather than on "similar criminal acts". *See* RCW 9.94A.310, .320. Thus while an offender may have committed three class A felonies, they may have been three different criminal acts: for example, first degree burglary, first degree kidnapping, and first degree arson. For which crime shall the offender be considered "amenable to treatment"?

Several research studies have been conducted concerning the reliability of predicting future dangerousness. The conclusion was reached that more often than not, such predictions are wrong.

> All available evidence indicates that our ability to predict the occurrence of future criminal behavior is appallingly poor. . . . and many studies have been wrong eighty to ninety percent of the time.

D. Boerner, at 2-17. *See also* J. Monahan, *Predicting Violent Behavior: An Assessment of Clinical Techniques* 26-44 (1981); Diamond, *Psychiatric Prediction of Dangerousness*, 123 U. Pa. L. Rev. 439 (1974); Ennis & Litwack, *Psychiatry and the Presumption of Expertise: Flipping Coins in the Courtroom*, 62 Calif. L. Rev. 693, 696, 732-34 (1974) (noting that psychiatrists are not even trained in the assessment or prediction of dangerousness); Bayley, *Good Intentions Gone Awry — A Proposal for Fundamental Change in Criminal Sentencing*, 51 Wash. L. Rev. 529, 539-44 (1976) (discussing the failure of rehabilitation programs as the answer to the crime problem). There was a growing public acceptance of this conclusion, and with this acceptance came a loss of public support for rehabilitation programs. In a society unwilling to commit the required resources to attempt to rehabilitate criminals, the indeterminate sentencing system began to fail.

Nowhere in the SRA, or "anywhere else in the adult criminal justice system, is there expressed a policy of 'responding to the needs' of offenders." *State v. Rice*, 98 Wn.2d 384, 392, 655 P.2d 1145 (1982) (comparing the SRA

to the Juvenile Justice Act of 1977). "The adult sentencing system . . . does not place such importance on rehabilitation." 98 Wn.2d at 393. While a sentence may offer the opportunity for an offender to improve him- or herself, rehabilitation under the statutory scheme is no longer a justifying purpose of sentencing. D. Boerner, at 1-2. Thus, judicial authority to impose treatment as part of the sentence, other than under the exceptions provided for sexual and first-time offenders, does not exist.

## II

Under the indeterminate sentencing system, judges were presumed to be in the best position to diagnose the criminal behavior and determine the appropriate sentence. Thus they were provided with a great deal of discretion. D. Boerner, at 1-1. However, in the view of some authors, individualized decisionmaking created a significant disparity among the sentences imposed for offenders of similar crimes in those cases which considered a defendant's amenability to treatment. Bayley, 51 Wash. L. Rev. at 535-36. Studies revealed that the disparity was not due to the individual defendant's needs, but rather to the decisionmaker's own philosophy and perspective. D. Boerner, at 2-10, 2-11. One response to these studies called for clearly articulated standards which would more effectively control, not abolish, the exercise of discretion by all officials involved in the sentencing process. T. Taylor, C. Motley & J. Feibleman, *Perspectives on Justice* 37, 41 (1975).

The purpose of enacting sentencing reform, therefore, was to create a new system and to restructure the judge's discretion. The emphasis was shifted from rehabilitation to proportionality, equality and justice. *See* RCW 9.94A.010; D. Boerner, at 2-2. The SRA promotes proportionality between the crime and the punishment by focusing on the seriousness of the offense and the offender's criminal history. In sexual offense cases rehabilitation concerns are consistent with the proportionality purpose because the

mandatory treatment program may never exceed the maximum sentence under the act. Thus while the rehabilitative needs of the offender are permitted to influence the nature of the sentence, they are not permitted to extend it beyond the standard range. D. Boerner, at 2-37. In nonsexual offense cases, however, rehabilitation concerns are not consistent with proportionality, in that a sentence based on future dangerousness will be extended beyond the standard range.

## III

In enacting the SRA, the Legislature changed our criminal sentencing system from an indeterminate, rehabilitation-oriented system to a determinate system, having punishment as its primary purpose. *In re Whitesel*, 111 Wn.2d 621, 626, 763 P.2d 199 (1988). Except for certain limited exceptions,[5] the SRA rejects the use of rehabilitation programs in sentencing. D. Boerner, at 2-35. Therefore, if future dangerousness is to be considered an aggravating factor in determining the sentence for nonsexual offense cases, it is the Legislature's province to make such a decision.[6]

## IV

The grounds which support our decision in *Pryor* do not exist in nonsexual offense cases. The extension of the future dangerousness factor to nonsexual offense cases violates the certain purposes of sentencing reform. It disrupts the proportionality policy of imposing sentences in accordance with the seriousness of the crime and the criminal record. Finally, it allows too broad a grant of discretion to

---

[5]Such as the first-time offender and the sexual offender exceptions under RCW 9.94A.120(7), discussed *supra*.

[6]We note that specialists within the field of forensic psychiatry have noted dangerousness issues are social policy issues "which must be combined with empirical research to bring resolutions to the dangerousness problem." *See* Menzies, Webster & Sepejak, *Hitting the Forensic Sound Barrier: Predictions of Dangerousness in a Pretrial Psychiatric Clinic*, in *Dangerousness* 115, 118 (1985).

the sentencing judge, which discretion the Legislature intended to limit. For these reasons, we hold future dangerousness is not an appropriate factor justifying an exceptional sentence in nonsexual offense cases.

■ The SRA allows a trial judge to impose an exceptional sentence, but requires the judge to enter written findings of fact and conclusions of law which justify the sentence. RCW 9.94A.120(2), (3). The statute sets forth a nonexclusive list of aggravating circumstances which may be considered. RCW 9.94A.390(2). We have held a sentencing remand is required where the reviewing court cannot conclude from the record that the trial court would have imposed the same sentence after considering only the valid aggravating factor(s). *State v. Dunaway*, 109 Wn.2d 207, 220, 743 P.2d 1237, 749 P.2d 160 (1987). In each of the cases presently before us, the trial court imposed an exceptional sentence and listed future dangerousness as one of the reasons justifying the sentence. We therefore examine each of the cases to determine whether sufficient aggravating factors exist, apart from future dangerousness, which support the sentences imposed.

We turn now to the resolution of the cases before us. In State v. Barnes, under our holding today, reliance on future dangerousness as an aggravating factor in nonsexual offenses is improper. The Court of Appeals decision to remand Barnes' case for resentencing is affirmed, in accordance with our decision.

In State v. Smith, we agree the first and second reasons listed by the trial court as justification for imposing the exceptional sentence properly indicate there may be aggravating factors present in this case. The Court of Appeals properly found the third and fourth reasons are not valid. However, the fifth and sixth reasons relied upon by the trial court reveal it relied on future dangerousness in imposing the exceptional sentence. Thus, four of the six reasons given do not support the sentence. We therefore reverse the Court of Appeals decision in *Smith* and remand for resentencing.

In State v. Worl, the first and second reasons given by the trial court indicate there may be sufficient aggravating circumstances to support an exceptional sentence. The record, however, reveals the sentence was imposed primarily based upon the finding of future dangerousness. Therefore, we reverse the Court of Appeals decision in *Worl* and remand for resentencing.

SMITH and JOHNSON, JJ., concur.

GUY, J. (concurring in the result) — I concur. While I am sympathetic to the dissent's view that future dangerousness may warrant an enhanced sentence in certain felony cases, I agree with the majority that future dangerousness may not be used as a factor in justifying an exceptional sentence in nonsexual offense cases absent further foundation in the Sentencing Reform Act of 1981 (SRA).

The decision as to whether future dangerousness may serve as an aggravating factor in nonsexual offense cases, and what elements a trial court should consider in finding future dangerousness in this context, lies properly within the province of the Legislature.

It would be a disservice for this court to impose upon trial courts a duty of evaluating whether a convicted felon will be dangerous in the future without an adequate foundation in our sentencing statutes for making such determinations, as exists in the area of sexual offenses. The future dangerousness finding is partially a clinical-rehabilitative determination. At present such an approach is adequately contemplated only in the SRA's approach to sexual offenses, in its amenability to treatment inquiry.

Without further legislative guidance in the area of nonsexual offenses, prosecutors might seek enhanced sentences through use of expert opinion supporting a finding of dangerousness. Defense counsel would likewise produce opinion presenting a contrary view. The content of this conflicting testimony would soon be as predictable to the

trial judge as would the names of the expert witnesses called. It would be improper to impose upon trial courts the duty of sorting out this type of conflicting testimony without a further grounding for this authority, and guidance for its exercise, in the SRA.

Accordingly, I agree that an exceptional sentence may not be imposed based on future dangerousness as an aggravating factor in convictions for nonsexual offenses.

DORE, C.J., and ANDERSEN, J., concur with GUY, J.

DOLLIVER, J. (dissenting) — I dissent. I cannot concur in the majority's conclusion future dangerousness is never an appropriate justification for an exceptional sentence in a nonsexual offense case. The majority both attempts to reopen issues already decided and ignores important objectives of the Sentencing Reform Act of 1981 (SRA) (RCW 9.94A).

In *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990), this court unanimously accepted future dangerousness as an appropriate justification for an exceptional sentence in a sexual offense case. Although the majority does not expressly overturn that result, the majority's analysis significantly undermines and confuses our decision in *Pryor*. The majority does not focus on any distinction between sexual and nonsexual offenses. Rather, the majority attacks the notion of future dangerousness generally. The majority questions trial courts' ability to predict future dangerousness and even goes so far as to reject outright future dangerousness as a consideration in imposing a sentence. Majority, at 707, 708-09. The majority concludes, "Because future dangerousness punishes an offender for a crime which the State has neither charged nor proven, it cannot, and should not, be considered in imposing a sentence." Majority, at 707. In so doing, the majority directly contradicts a unanimous decision by this court only 1 year ago. *Pryor*, 115 Wn.2d at 453. We have already determined

future dangerousness is a viable aggravating factor which may be predicted with sufficient certainty. I see no reason to reconsider that conclusion now.

The majority also confuses the standard adopted in *Pryor*. To justify an exceptional sentence based on future dangerousness, *Pryor* required both a history of similar criminal acts and a lack of amenability to treatment. *Pryor*, 115 Wn.2d at 453. Contrary to the majority's assertions, *Pryor* requires more than the ordinary criminal history which has already been considered in establishing the standard sentence range. The *Pryor* standard requires a history of *similar* criminal acts, thereby establishing a dangerous trend or tendency on the part of the defendant. The majority's hypothetical in which a defendant's criminal history includes the varied and unrelated crimes of burglary, kidnapping, and arson would not satisfy the "similar criminal acts" standard. See majority, at 708-09. Contrary to the majority's assertion, a pattern of similar criminal acts may exist both in and out of the sexual offense context. In this case, each of the defendants' criminal history demonstrated a pattern of aggressive, assaultive behavior.

Finally, and most importantly, the majority fails to recognize the full spectrum of objectives embraced by the SRA. The first and overriding objective of the SRA is retribution or just deserts. *State v. Rice*, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982); D. Boerner, *Sentencing in Washington* 2-31 (1985). The majority correctly identifies this objective. However, just deserts is only part of the overall purpose of the SRA. The SRA also includes protection of the public and offering the offender an opportunity to improve him- or herself among its varied objectives. RCW 9.94A.010(4), (5). While arguably at odds with the ideal of just deserts, these utilitarian objectives are no less a part of the overall scheme of the SRA. As Professor Boerner writes:

> The tension between utilitarian purposes, in which the goal is to accomplish some future objective, and principles of

retribution and desert, which focus on what has occurred in the past, is deep and persistent. Historically, most theoreticians have denied the possibility that these purposes could be integrated. . . .

. . . The Sentencing Reform Act's statement of purposes is drawn from and based upon the thesis that this integration can be accomplished.

. . . .

. . . [I]t is clear that the Act does not accept the argument of those theoreticians who argue for just deserts as the sole purpose for which punishment should be imposed.

D. Boerner, at 2-30 through 2-34. By completely failing to account for the competing utilitarian objectives, the majority ignores express legislative intent and construes the SRA in a manner which falls well short of its fuller objectives.

When the express objectives of the SRA are viewed in their entirety, future dangerousness is clearly an appropriate justification for an exceptional sentence, even in non-sexual offense cases. RCW 9.94A.390 provides a nonexclusive list of aggravating factors which may justify an exceptional sentence. When this court considers the validity of a proposed additional aggravating factor to justify an exceptional sentence, the express purposes of the SRA provide the criteria against which the proposed aggravating factor must be measured. RCW 9.94A.120(2). In this instance, the SRA expressly includes protection of the public among its six enumerated objectives. RCW 9.94A.010(4). Therefore, while punishment and just deserts are the primary purposes of the SRA, protection of the public is an equally valid competing purpose which may justify an exceptional sentence under narrowly controlled circumstances. Accordingly, I would accept future dangerousness as an appropriate aggravating factor in a nonsexual offense case.

The use of future dangerousness as an aggravating factor in nonsexual offense cases is supported by decisions from our own Court of Appeals, the Minnesota Supreme Court, and the United States Supreme Court. *Barefoot v. Estelle*, 463 U.S. 880, 897, 77 L. Ed. 2d 1090, 103 S. Ct.

3383 (1983) (homicide); *State v. Vandervlugt*, 56 Wn. App. 517, 523, 784 P.2d 546 (1990) (assault and kidnapping); *State v. Davis*, 53 Wn. App. 306, 316, 766 P.2d 1120 (vehicular homicide and felony hit and run), *review denied*, 112 Wn.2d 1015 (1989); *Jackson v. State*, 329 N.W.2d 66, 67 (Minn. 1983) (burglary); *State v. Park*, 305 N.W.2d 775, 776 (Minn. 1981) (unauthorized use of motor vehicle).

If future dangerousness were correctly accepted as an aggravating factor justifying an exceptional sentence, the court would need to establish the criteria by which future dangerousness would be identified. In *Pryor*, both a history of similar criminal acts and a lack of amenability to treatment were required. *Pryor*, 115 Wn.2d at 454. A history of similar acts is also an appropriate requirement for a finding of future dangerousness in nonsexual offense cases. Nothing in the distinction between sexual and nonsexual offenses renders such a factor less relevant in the nonsexual offense setting. In fact, the courts of this state have concluded any finding of future dangerousness without a history of similar acts or other corroborating evidence both offers wide latitude for abuse and undermines the general objectives of the SRA. *State v. Payne*, 45 Wn. App. 528, 533, 726 P.2d 997 (1986). The real issue here is defining a second criteria which will adequately control the use of future dangerousness as an aggravating factor.

The compulsory treatment option renders amenability to treatment especially relevant in sexual offense cases. However, the SRA does not totally abandon a rehabilitative ideal in the nonsexual offense context. While the SRA rejects the traditional notion of coerced rehabilitation, the act does adopt a philosophy of facilitative rehabilitation in which a rehabilitative process is offered and encouraged, but never required. *See* D. Boerner, at 2-35. To this end, the SRA expressly adopts among its six purposes the desire to "[o]ffer the offender an opportunity to improve him or herself". RCW 9.94A.010(5). Pursuant to this facilitative philosophy, the Washington State Department of Corrections (DOC) encourages all inmates to participate

in educational or vocational programs. DOC offers inmates an opportunity to participate in a variety of self-improvement programs addressing anger and stress management, mental health, and substance abuse. *Division of Prisons Facility Description Overview*, in Department of Corrections, *A Guide to DOC Facilities* (Nov. 30, 1989). The effect of the SRA's facilitative approach is to provide nonsexual offenders two vehicles by which to overcome existing deficiencies: (1) The incarceration itself with the attendant time for reflective contemplation and maturation; and (2) the various optional treatment and self-help opportunities.

I would hold that, within the context of a nonsexual offense case, a finding of future dangerousness requires both a history of similar criminal acts and a finding based on expert testimony that the defendant poses a threat to the public beyond that which could reasonably be ameliorated by incarceration for a period conforming to the standard range. The inquiry under this standard necessarily bears a great similarity to the lack of amenability to treatment. However, the essential focus here is whether the standard sentence range provides an adequate opportunity for the defendant to overcome existing deficiencies through the combined effects of the incarceration and optional treatment programs.

Decisions from this state's Court of Appeals are consistent with such a narrow standard in nonsexual offense cases. Although only two prior cases have directly considered future dangerousness as an aggravating factor in nonsexual offense cases, both relied heavily on evidence of the defendant's poor prognosis. In *Vandervlugt*, the record demonstrated a strong history of violent criminal behavior and a letter from a Department of Social and Health Services doctor testified to the defendant's "severe personality disorder" and the poor prognosis for change. The court expressly concluded the defendant "posed a threat to the community beyond that which could be ameliorated by incarceration for a period conforming to the standard range." *Vandervlugt*, 56 Wn. App. at 523. In *Davis*, the

court upheld the use of future dangerousness as an aggravating factor in sentencing for a vehicular homicide conviction where the defendant was intoxicated when he committed the crime, disdained substance abuse treatment, and refused to accept responsibility for his behavior. *Davis*, 53 Wn. App. at 313-15.

This narrow standard is also consistent with the general objectives and principles of the SRA. The utilitarian purposes of the SRA establish a tension between protection of the public and hope for the individual's improvement. The opening section of the SRA provides the act is designed both to "[p]rotect the public" and to "[o]ffer the offender an opportunity to improve him or herself". RCW 9.94A.010(4), (5). Where a sentence conforming to the standard range is insufficient to ameliorate the threat posed by the defendant because the defendant cannot overcome deficiencies in his behavior within that time, both objectives are furthered.

For these reasons, I would accept future dangerousness as an aggravating factor justifying an exceptional sentence. As a result, I disagree with the majority and would affirm the sentences of defendants Smith and Worl. However, I would vacate the sentence of defendant Barnes and remand him for resentencing. The State conceded the invalidity of one of the three aggravating factors in the Court of Appeals. *State v. Barnes*, 58 Wn. App. 465, 474, 794 P.2d 52 (1990). I would also reverse the finding of future dangerousness because the trial court acted without the aid of any expert testimony or any other evidence indicating the crime was motivated by a compulsion which is difficult if not impossible to overcome. *Barnes*, 58 Wn. App. at 476. Since two of the three aggravating factors relied on by the trial court are invalid, I would remand defendant Barnes for resentencing.

BRACHTENBACH and DURHAM, JJ., concur with DOLLIVER, J.