IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 35317-6-III |
| DAYRA R. SALCEDO, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| JORGE SALCEDO, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Dayra Salcedo appeals from a dissolution decree, arguing that the trial court erred in denying her request for a continuance of trial and in its distribution of assets. Concluding that the trial court did not abuse its considerable discretion, we affirm.

FACTS

Dayra Salcedo met Dr. Jorge Salcedo during 1998 and married him the following year. Both were natives of Columbia who were in the United States to further their education. The couple moved to Chicago, where Dr. Salcedo completed his medical residency. In 2002 they moved to McAllen, Texas, where Dr. Salcedo practiced medicine.

Positions in other Texas towns followed, with Dr. Salcedo earning salaries varying between $280,000 and $440,000. Jorge Salcedo became a United States citizen in 2003. Dayra Salcedo, who was in the United States on a student visa while pursuing a master's degree, never completed graduate school and eventually obtained a green card.

The couple moved to Spokane in 2008, where Jorge took a position at the Veterans Administration Hospital (VA); his annual salary was $250,000. The couple purchased a private disability policy to protect them in the event Jorge was unable to practice. Children were born to the couple in 2010 and 2013. In January 2015, Dr. Salcedo was suspended from work due to performance issues; he had stopped taking his anxiety medication. The VA continued to pay his salary while he was suspended.

In August, Jorge used $10,000 in community funds to open a checking account solely in his name. Thereafter, his paychecks were deposited to that account; the community checking account declined to $0 on August 27. Dayra petitioned for dissolution of the marriage on December 15. Sometime thereafter, Jorge left the country and went to Columbia. He returned to Spokane for only a brief period during which he moved his personal property to Texas.

On January 28, 2016, the court conducted a hearing to set temporary orders. Jorge represented that his VA salary would end the first week of March. The court ordered Jorge to transfer $27,000 into a trust fund for the parties; $5,000 of that was disbursed to

Dayra for her attorney fees. The court directed that future VA payments and Jorge's Social Security payments would be shared by the parties.

In March 2016, Jorge received $100,000 from the insurance company due to his disability. The approval letter indicated that he would receive $10,000 per month through May 2031, unless the disability was due to a mental disorder. In that circumstance, the payments would last only two years.

Trial was scheduled for October 3, 2016. Dayra's former counsel had served discovery requests on Jorge's counsel in June, but Jorge did not respond as requested. Trial was continued to December 5, 2016, to allow for mediation. On October 27, six weeks before trial, Dayra asked for another continuance in order to complete discovery, explaining that discovery was incomplete because Jorge had been out of the country and because the parties attempted to settle the case via mediation. She needed information concerning his income and employment, as well as an evaluation of Jorge's mental health issues as they might affect the parenting plan.

The motion was heard November 15, 2016. The court found that mediation had failed, but denied the request. The court noted that the case had been pending over a year and needed to be resolved.

Jorge had answered some of the interrogatories propounded to him, but had not produced documents requested of him. Dayra's new counsel asked the court to compel

3

discovery and again asked for a continuance of the trial due to the lack of production. The court denied the request, citing to its previous ruling.[1]

On the first day of trial, Jorge arrived with bank records covering the last six months. The court granted one hour for Dayra to look at the records before beginning the trial. On the next day, Jorge arrived with a bag of documents and used some of them to refresh his memory during the trial. He was receiving $10,000 a month from his disability insurance, but stated that those payments would end in March 2017. He also was receiving Social Security disability payments for himself and for the children. Jorge testified that he hoped to return to work as soon as possible, but the Texas Medical Board required him to undergo an evaluation and complete a program before returning to work.

Dayra testified that she would need to return to school and it would take four to five years to become licensed in the State of Washington. She requested $5,000 per month in maintenance for six years, as well as the home and her car, the trust account, and the couple's retirement accounts, while asking that the debt be assigned to Jorge.

The court issued its ruling on February 8, 2017. Jorge was ordered to pay Dayra $5,000 until May 2017, and then $425 for two months. Short term maintenance was deemed necessary to allow Dayra time to find employment. Although she had not been employed during the marriage, she was well-educated. The court split the equity in the

---

[1] Both parties changed attorneys after the discovery requests were filed, leaving the new attorneys on both sides at something of a disadvantage.

house, the trust account, and the retirement accounts, but assigned the debt to Jorge. The court credited Dayra with most of the disbursements from the trust account. Although currently unemployed, the court believed that Jorge would become employed again in the near future.

Ms. Salcedo timely appealed to this court. A panel considered the appeal without hearing argument.

## ANALYSIS

This appeal challenges the denial of the continuance as well as the court's maintenance and property disposition rulings. We address the challenges in that order.

*Continuance*

Ms. Salcedo initially argues that the court erred in denying her continuance motions and giving undue emphasis to local case handling guidelines. Although she puts forth arguments for why the court should have granted the continuance, she has not established that the court was required to do so.

Long established principles govern our review of this issue. Since the early days of statehood, the decision to grant or deny a trial continuance has been reviewed for abuse of that discretion. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004); *In*

*re Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986).[2]  When a case has been previously continued, an even stronger showing in support of the subsequent request is necessary.  *State v. Barnes*, 58 Wn. App. 465, 471, 794 P.2d 52 (1990), *aff'd*, 117 Wn.2d 701, 818 P.2d 1088 (1991).  Discretion is abused if it is exercised on untenable grounds or for untenable reasons.  *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Dayra argues that the trial court erroneously relied on its case processing standards, which apparently anticipate that 90 percent of all domestic cases will be resolved within 10 months of filing, in denying the request.  Since the case was already at 11 months when the motion was heard, we cannot say that relying on the standards was erroneous.

This was also the second (and third) time that new counsel sought a continuance.  In retrospect, it appears that a longer period might have been required to prepare for trial in the event that mediation failed and that the parties should have built that contingency into their initial continuance request.  However, we cannot say that continuing a case two months in order to allow for mediation and possible settlement was such a short period that the trial court necessarily would have understood that more trial preparation time

---

[2] This is considered an aspect of the ordering of a court's calendar, a matter typically left to the discretion of the trial court.  *State ex rel. Sperry v. Superior Court*, 41 Wn.2d 670, 671, 251 P.2d 164 (1952).

might would be needed. The fact that the parties did not update the court on the lack of discovery prior to the first request also suggests that the second (and third) request could have been avoided altogether by including that issue in the initial request.

We understand, and have some sympathy for, Ms. Salcedo's argument that her new counsel needed more time to prepare. Still, it is the trial judge's responsibility in the first instance to determine whether to continue a case and, if so, for how long. Just because the judge could have done something differently, does not mean that she erred in her actions.

Ms. Salcedo has not established that the court acted on untenable grounds. Accordingly, she has not demonstrated that the judge abused her discretion.

*Maintenance*

Ms. Salcedo next argues that the court erred in granting the limited spousal maintenance that it did. The court essentially halved the disability insurance that was received, and ended maintenance a few months after the disability payments ended. Again, we discern no abuse of discretion.

An overarching principle of family law is that trial courts are accorded great discretion in domestic matters due to the need for finality and certainty. *E.g.*, *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Appellate courts thus discourage tinkering with trial court rulings. *Id.* The standards governing review of the issues presented in this appeal reflect this policy.

7

A request for maintenance is controlled by RCW 26.09.090.  Its nonexclusive list of factors to be considered includes:

> (a)     The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
> (b)     The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c)     The standard of living established during the marriage . . . ;
> (d)     The duration of the marriage . . . ;
> (e)     The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f)     The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

The purpose of maintenance is to support a spouse until he or she is able to become self-supporting. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).  There is no right to spousal maintenance in Washington, but the decision to grant or deny maintenance is reviewed for abuse of discretion.  *In re Marriage of Zahm*, 138 Wn.2d 213, 226-227, 978 P.2d 498 (1999); *Friedlander v. Friedlander*, 80 Wn.2d 293, 297-298, 494 P.2d 208 (1972).  Trial courts must consider the statutory factors of RCW 26.09.090.  *In re Marriage of Williams*, 84 Wn. App. 263, 267-268, 927 P.2d 679 (1996).  However, findings regarding the statutory factors are not necessary as long as it is clear that the court considered them.  *In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

Ms. Salcedo does not fault the process followed by the trial judge in making her award, but does take issue with the substantive outcome in light of her lack of an employment history and need for additional education. This court lacks the ability to make its own substantive determination of Ms. Salcedo's needs, but must consider the record before the trial court. That court ordered maintenance for the entire period that Dr. Salcedo was receiving the disability insurance payments purchased by the community and a few additional months afterwards. At the end of that period, Dr. Salcedo had only his Social Security disability to live on. Whether or not the court believed he would again be earning a strong income in the future, the fact is that Dr. Salcedo had no income at the time the maintenance award ended and it was uncertain when he might be employed full-time.

The trial court essentially divided the income in half during the pendency of the dissolution, and for a brief period of time thereafter. It simply had no financial basis on which it could award additional maintenance even if it had wanted to do so. Ms. Salcedo desires, as indicated in her brief, to maintain her former lifestyle. However, that lifestyle had ended well before the trial court divided the remains. It simply had no ability to award maintenance unsupported by income.

The court did not abuse its discretion.

*Property Distribution*

Anticipating the previous ruling, Ms. Salcedo argues that she should have been awarded a greater share of the property in order to account for her maintenance needs. As with the previous arguments, we discern no abuse of the trial court's considerable discretion.

RCW 26.09.080 requires consideration of four factors[3] in reaching a "just and equitable" property division. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-243, 170 P.3d 572 (2007). The trial court has broad discretion in distributing the marital property and its decision will be reversed only when discretion was exercised on untenable grounds or for untenable reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). This deferential standard of review exists because the trial court is "in the best position to assess the assets and liabilities of the parties" in order to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

For reasons similar to those just discussed, the court did not err in disbursing the property as it did. The assets were split evenly and the debt was assigned to Dr. Salcedo in light of his greater earning capacity. In essence, Ms. Salcedo did receive the greater

---

[3] Those factors include the nature and extent of (1) the community property, (2) the separate property of the parties, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. RCW 26.09.080.

share of the community property because her portion was not reduced by the community debt. Given that Dr. Salcedo had nothing to live on but disability income when the property was distributed, it simply is not an abuse of discretion to deny a greater award to Ms. Salcedo. Both parties needed to find work and were likely to need to use some of the property award to make ends meet in the interim.

The trial court had tenable reasons for acting as it did. Accordingly, there was no abuse of discretion.

Ms. Salcedo asks that we award her attorney fees on appeal. We exercise our discretion and decline her request. The parties shall bear their own costs and fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Siddoway, J.