[No. 21289-3-I.   Division One.   August 14, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. DUANE E. NICHOLAS, *Appellant.*

---

[19]*State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986); *State v. Patterson,* 112 Wn.2d 731, 735, 774 P.2d 10 (1989).

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John Bell, Deputy,* for respondent.

SWANSON, J.—Duane E. Nicholas appeals from the judgment and sentence entered following his conviction on four counts of first degree robbery. Nicholas contends that he was denied his right to proceed pro se and that he was denied effective assistance of counsel when the trial court failed to grant a continuance. Nicholas also challenges two jury instructions.

Nicholas was charged by amended information with four counts of first degree robbery. The charges arose from robberies at a jewelry store, two convenience stores, and a liquor store that occurred between February 12, 1987, and May 2, 1987. Nicholas was arrested on May 5, 1987. A search of Nicholas' motel room, pursuant to a search warrant, produced various items of evidence introduced at trial.

All of the victims identified Nicholas' photograph from a photo montage shortly after each robbery and identified Nicholas as the robber in court. The jury subsequently found Nicholas guilty as charged on all four counts. The jury also returned special verdicts on all counts finding that Nicholas was armed with a deadly weapon.

Because several issues arise from the trial court's pretrial and trial rulings, a more detailed summary of these events is required.

June 25, 1987. Nicholas appeared without counsel regarding his motion to proceed pro se. The deputy prosecutor informed the trial court that Nicholas had ignored court orders to contact the public defender's office. The deputy prosecutor requested permission to call the public defender's office herself to have an attorney contact Nicholas "to the effect only of determining whether or not he is in fact properly advised of the problems with proceeding pro se . . ." Nicholas repeated his desire to proceed pro se, but expressed no objection to being contacted by an attorney. Trial was set for July 13, 1987.

July 10, 1987. Nicholas appeared and was accompanied by Dennis Hough, an attorney with Associated Counsel for the Accused. Hough informed the trial court that he was not appointed counsel for Nicholas "exactly," but that Nicholas had spoken with Hough's colleague Greg Girard on July 8, 1987. Hough stated that Nicholas "has not yet decided as to whether or not he will accept our representation."

Hough, on Nicholas' behalf, then made a series of motions: for "access to the law library" to prepare his defense; for paper and a typewriter; for copies of discovery materials, such as the police reports; and for access to the videotape that the State intended to introduce at trial. Hough indicated that Girard would excise the names and addresses from the discovery materials to eliminate any risk that Nicholas might attempt to intimidate potential witnesses.

The trial court, noting that trial was to start on July 13, treated Nicholas as though he were acting pro se and essentially granted all of his motions: (1) ordered copies of discovery be provided to Nicholas, with the names and addresses of the witnesses removed;[1] (2) ordered that Nicholas be supplied with paper; (3) appointed Girard as a "runner to the law library" to assist Nicholas in preparing his defense; and (4) ordered that the videotape be shown to Nicholas prior to its introduction at trial.

The trial court left open the possibility of further action if these measures proved inadequate. At Hough's request, the trial court also provided $200 should Girard desire to hire a legal intern to perform some of the "legwork" in carrying out the duties of "runner."

July 21, 1987. Nicholas appeared on the criminal motions calendar accompanied by Greg Girard. Both the prosecutor and the trial court thoroughly rehearsed with Nicholas the difficulties of proceeding pro se. During the course of this examination, Nicholas indicated that he preferred a "legal advisor counsel" to having an attorney represent him. Nicholas also informed the trial court that he was not asking Girard to be his "legal advisor" and that he preferred to hire his own "legal advisor counsel." Nicholas repeatedly asserted that he was not indigent and that he was negotiating with Anthony Savage to be his "legal advisor counsel." Trial had been reset for August 17, 1987. The trial court reminded Nicholas that the trial date was rapidly approaching and then ruled that Nicholas could proceed pro se.

In light of the testimony, Girard expressed an understandable curiosity about his future role in the proceedings. Nicholas stated his willingness that Girard be available for assistance until he secured the services of his chosen advisor. The trial court refused to grant Nicholas' request

---

[1]Hough stated: "Mr. Nicholas has no problem with the lack of the names, addresses, telephone numbers whited out. That is no problem."

for physical access to the library, observing that the authorization of funds for a "runner" was sufficient to provide the requested materials.

September 2, 1987. Nicholas appeared on the morning of September 2, the rescheduled trial date, accompanied by Greg Girard, and informed the court that "I don't feel that my case is properly prepared at this time." Nicholas stated that Girard "is supposed to be my legal advice counsel and he has not take[n] any action on preparing this case." In particular, Nicholas complained that Girard had not interviewed certain witnesses, obtained second opinions on various pieces of evidence, or otherwise prepared the defense. The trial court then explained to Nicholas that if he wanted his legal advisor to undertake certain actions, then it was necessary for Nicholas to take the initiative.

Nicholas acknowledged that he had not given Girard or the State his witness list and had not talked to Girard since August 19. Girard informed the court that Nicholas had been provided copies of all discovery materials received from the State and that he (Girard) had been available to respond to Nicholas' requests. When asked whether he wanted to proceed pro se or have Girard represent him, Nicholas replied that he had "no alternative" and wished to have Girard "proceed with the case."

Girard then moved for a 2–week continuance. The State objected, suggesting that, given the existence of three outstanding arrest warrants in other states and his familiarity with the criminal justice system, Nicholas was intentionally trying to delay the proceedings. In response, the trial court continued the case until the following morning, ordering the State to make its witnesses available to Girard. The trial court indicated that it would consider a further extension at that time should Girard, as an officer of the court, deem it necessary.

September 3, 1987. On the following morning, September 3, 1987, Girard informed the court that he was not yet ready for trial. Girard stated that he had talked to five of

the State's civilian witnesses but had been unable to contact several witnesses or undertake any other investigation of the State's case. Although requesting a continuance, Girard also stated, "I was hoping that the State could put their case on this week and ask if we could come back on Tuesday with our case to give me the weekend." The trial court essentially granted this request:

> I think we should proceed, but I do want to proceed with deliberate steps. It seems to me that we can go ahead and start picking the jury. We are going to have a long weekend, and we can at least go through the five witnesses that you have already indicated, if we get that far. It may be that we won't get that far. We may have a problem getting jurors even, because, as you know, a lot of their terms will end this Friday, tomorrow, and we may not be able to get them to stay over for the long weekend. So there are a number of potential glitches or problems that we could face. Then we will have the weekend. And I might as well tell you now, tomorrow I have got to act as Special Inquiry Judge in the afternoon. That means we can't go beyond 2:45 at the latest, and, if it gets to that point by noon tomorrow we have gone through those five witnesses, we will just simply recess for the rest of the week and come back Tuesday and then that will give you those three days and I know you want to work over the weekend to take a look at those things and let me know, of course, Tuesday morning if there are any problems. I think that's what we ought to do, at least get started.

Girard expressed no objection to this procedure. The court then ruled on Girard's motions in limine, the State presented one witness, and the trial was recessed until the following day, Friday, September 4, 1987.

September 4, 1987. Girard's sole request was to recess at noon in order to talk to the State's fingerprint expert, a request that the trial court granted. The State then presented testimony from six witnesses, and the trial was recessed at 11:30 a.m. for the Labor Day weekend, until the following Tuesday, September 8, 1987.

September 8, 1987. The proceedings resumed and the State presented its remaining witnesses. Defense counsel then requested a continuance, stating that he had been unable to contact several witnesses, including Nicholas'

mother in Chicago,[2] and that he had been unable to have an independent examination of the fingerprint evidence. Counsel was unable, however, to make an offer of proof as to what the witnesses might say. The trial court denied the defense counsel's request.

> From the information that I can glean, I think the inference is that it's just been one delay after another by the defendant, for whatever reason he may have had. The opportunity to call his mother, sister, have been there for some time, and his sister's phone number evidently is no longer current. His mother doesn't seem to wish to answer it, answer any phone calls.
>
> These other individuals, we just don't know anything about them, whether they would furnish us with any information or not that would assist the defendant in his defense.
>
> I've, to be perfectly frank with you, dragged the case along, kind of given Mr. Girard, whom I have the highest respect for as a lawyer in defending cases, given him additional opportunities, and, of course, we've just gone through a three–day weekend, we had Friday afternoon and part of Thursday, also. So I'm going to deny the motion for continuance, believing that at this point in time it's inappropriate.

The defense then rested.

■ Nicholas first contends that he was effectively denied his right to pro se representation by the trial court's pretrial rulings. The sixth amendment to the United States Constitution guarantees a criminal defendant the constitutional right to waive the assistance of counsel and proceed pro se. *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *State v. Hahn,* 106 Wn.2d 885, 889, 726 P.2d 25 (1986). In *Bounds v. Smith,* 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977), the United States Supreme Court held that prisoners seeking postconviction relief have a right to "adequate, effective, and meaningful" access to the courts. *Bounds,* 430 U.S. at 822. Our Supreme Court has cited *Bounds* for the proposition that "[i]n order to ensure a meaningful pro se defense, the State must allow the defendant reasonable access to legal materials, paper,

---

[2] At an earlier hearing, Nicholas informed the court that his mother could testify that he was in Chicago at the time of the robberies. Apparently, Nicholas' mother never returned his calls.

writing materials, and the like." *State v. Bebb,* 108 Wn.2d 515, 524, 740 P.2d 829 (1987).

In support of the assertion that he was denied meaningful access to legal materials required for preparation of his defense, Nicholas cites the trial court's denial of his request for physical access to the law library, the removal of witnesses' names from discovery materials, and the unavailability of a "legal advisor" or "runner." As the foregoing factual summary demonstrates, however, these allegations are without merit. The trial court appointed Greg Girard to assist Nicholas in any capacity that the defendant desired; the trial court also provided funds to hire a "runner" to do legwork. Nicholas apparently received copies of all discovery materials.[3] In addition, the record indicates Girard was available to carry out any specific requests that Nicholas might make, despite Nicholas' assertion that Girard was difficult to contact. Although Nicholas complained that Girard had failed to contact potential witnesses, he acknowledged that he had not provided Girard with his witness list.

The trial court provided Nicholas with substantial means as well as two lengthy continuances to prepare his own defense. Despite repeated assertions of his desire to proceed pro se, Nicholas made no apparent effort in his own behalf, believing that his "legal advisor" should take the initiative. Indeed, as late as July 21, 1987, Nicholas informed the court that he was not indigent and intended to hire his own "legal advisor counsel." The record does not indicate that Nicholas ever requested any specific legal materials from Girard or sought to utilize the services of a "runner." Nicholas' failure to make a reasonable effort to prepare his own defense distinguishes this case from *Milton v. Morris,* 767 F.2d 1443 (9th Cir. 1985), relied upon by

---

[3]On appeal, Nicholas appears to contend that the trial court erred in removing the witnesses' names from the discovery materials. However, Nicholas expressly agreed to this procedure at the July 10, 1987, hearing. The record indicates that Girard would have been permitted access to the names and was available to perform any reasonable investigation requested by Nicholas.

appellant, where the defendant was repeatedly thwarted in legitimate attempts to prepare his defense and then refused to participate at trial.

Because Nicholas declined to utilize the means placed at his disposal, the failure to provide physical access to a law library is of no significance. A law library is but one of various constitutionally permissible means of providing "meaningful access" to the courts. *Bounds,* 430 U.S. at 830. Where, as here, constitutionally adequate means of access are provided, a defendant may not reject the method provided "and insist on an avenue of his or her choosing." *United States v. Wilson,* 690 F.2d 1267, 1271 (9th Cir. 1982), *cert. denied,* 464 U.S. 867 (1983).

Under these circumstances, Nicholas essentially waived his right to proceed pro se by requesting that Greg Girard represent him on the first day of trial. In *State v. Bebb, supra,* the trial court granted the defendant's request to proceed pro se but appointed standby counsel over the defendant's objection. Several weeks prior to trial, standby counsel, at the defendant's request, became cocounsel and represented the defendant fully from that point on. The defendant made no attempt to assert his pro se rights during trial.

On appeal, the defendant argued that certain pretrial rulings had so undermined his relationship with standby counsel as to infringe impermissibly upon—and compel him to relinquish—his right to proceed pro se. Our Supreme Court rejected this argument, observing:

> Since the right to proceed pro se exists to promote the defendant's personal autonomy, rather than to promote the convenience or efficacy of the trial (and often operates to the defendant's detriment), courts generally find that relinquishment of the right to proceed pro se is a far easier matter than waiver of the right to counsel.

*Bebb,* at 525–26. The *Bebb* court further found that the trial court's rulings had not in fact affected the defendant's relationship with standby counsel and that the defendant had acquiesced in counsel's actions at trial. Under these

circumstances, the court found that the defendant had voluntarily relinquished his right to proceed pro se. *Bebb*, at 526.

The situation in the instant case is comparable to that in *Bebb*. Despite Nicholas' assertion that he was compelled to accept Girard's representation on the day of trial, the record shows that Nicholas chose not to utilize any of the means that were placed at his disposal. During trial Nicholas made no attempt to reassert his pro se rights and raised no objection to his counsel's conduct of the trial. As in *Bebb*, the record here "does not show that [the defendant] did anything other than voluntarily waive his right to proceed pro se and reclaim his right to counsel." *Bebb*, at 526; *cf. Dorsey v. State*, 171 Ind. App. 408, 357 N.E.2d 280 (1976).

■ Nicholas next contends that he was denied effective assistance of counsel when the trial court rejected defense counsel's request for a continuance. Appellant's arguments on this issue appear to be directed to the trial court's rulings on the first 2 days scheduled for trial, September 2 and 3, 1987. The trial court's ruling on a request for a continuance will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Hartley*, 51 Wn. App. 442, 445, 754 P.2d 131 (1988).

On the morning set for trial, September 2, 1987, when Nicholas requested that Girard represent him, the trial court recessed the proceeding until the following morning to permit defense counsel the opportunity to interview the primary State witnesses. On the following morning, September 3, 1987, defense counsel informed the trial judge that he had spoken with five witnesses and made the following request:

> I move to continue this matter. Since I saw you last, I actually talked to one, two, three, five of the civilian witnesses which are most of the civilian witnesses in the State's case. I have also made efforts but have not talked to any of the potential witnesses of the State. I have an investigator working on that further today. I don't know what progress we will make. There's a couple of witnesses for which we don't have

addresses and phone numbers located in the Greater Seattle area. There's also further investigation that needs to be done with respect to the State's case. *I was hoping that the State could put their case on this week and ask if we could come back on Tuesday with our case to give me the weekend.*

(Italics ours.) Because the trial court essentially granted defense counsel's request, appellant should not now be heard to challenge this ruling. Moreover, defense counsel gave no indication that he was hampered in any way by the ruling. He was fully able to argue appropriate motions in limine, including a motion to sever, and to cross–examine the State's witnesses, most of whom were the robbery victims.

The only real denial of appellant's motion for a continuance occurred at the end of the State's case on September 8, 1987, when defense counsel made the following carefully worded request:

> Your Honor, *I think it's [i]ncumbent on me to express my client's concerns regarding certain aspects of trial preparation.* I won't go into the background again of how this case has evolved.
>
> To update the Court, we have attempted to contact several witnesses. Have been unsuccessful, frankly. We have some phone numbers. We—But today has been unsuccessful getting hold of any witnesses.
>
> In addition, *my client's concerned* about the fingerprint evidence and lack of our ability to have an expert look at the fingerprint information and have an independent analysis of that. That's something I haven't accomplished, haven't anyone appointed or anything of that nature. And we have no evidence to present at this time, and so that's where we're at at this point.
>
> *I guess I'm asking for a continuance again.*

(Italics ours.) In requesting the continuance, counsel avoided any representation to the trial court that he was unprepared to continue. Counsel's careful phrasing is significant given the trial court's express reliance on counsel's own assessment of his preparedness. Moreover, defense counsel had had a long weekend in which to contact potential defense witnesses and was unable to present an offer of proof as to what testimony they might present. In light of these circumstances, as well as the trial court's decision to

slow down the trial to accommodate defense counsel's requests, and the already lengthy delay caused by the defendant's failure to prepare his own defense, the trial court's refusal to grant a continuance on September 8 did not deny Nicholas his right to counsel and was not an abuse of discretion.[4]

Nicholas next contends that the trial court erred in giving instruction 5, which instructed the jury on an uncharged alternative means of committing first degree robbery in connection with count 1, the robbery of the Zale's jewelry store. RCW 9A.56.200(1) provides that a person is guilty of first degree robbery

> if in the commission of a robbery or of immediate flight therefrom, he:
> (a) Is armed with a deadly weapon; or
> (b) Displays what appears to be a firearm or other deadly weapon . . .

Count 1 of the information alleged that Nicholas was armed with a deadly weapon pursuant to RCW 9A.56.200(1)(a). Instruction 5, however, permitted conviction if Nicholas "was armed with a deadly weapon *or* displayed what appeared to be a firearm or other deadly weapon . . ." Nicholas contends that instruction 5 permitted him to be convicted of an uncharged crime.[5]

When a statutory offense may be committed in alternative ways or by alternative means, the information may allege one or all of the alternatives, so long as the alternatives are not repugnant. *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942); *see also State v. Bray*, 52 Wn. App. 30, 756 P.2d 1332 (1988). When the information alleges only one alternative, however, it is error to instruct

---

[4]Appellant's claim of ineffective assistance of counsel is based on the trial court's alleged error in denying the motion for a continuance. Appellant has not directed any argument to specific actions or omissions by counsel during the trial that might constitute ineffective assistance of counsel.

[5]The remaining counts in the information and the corresponding instructions set forth both alternative means of RCW 9A.56.200(1)(a) and RCW 9A.56-.200(1)(b).

the jury on the uncharged alternatives, regardless of the strength of the evidence presented at trial. *State v. Severns, supra* (reversible error to instruct the jury on alternative means of committing rape when only one alternative charged).

Here, instruction 5 erroneously submitted to the jury the uncharged alternative means of committing first degree robbery set forth in RCW 9A.56.200(1)(b). No exception was taken to the giving of instruction 5. Generally, a party must object to an instruction at trial in order to preserve the issue for appellate review. *State v. Bockman,* 37 Wn. App. 474, 493, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984). However, even if we assume the error in instruction 5 is of constitutional magnitude it was harmless beyond a reasonable doubt.

An error in instructing on an uncharged means of committing a crime may be harmless if, for example, "in subsequent instructions the crime charged was clearly and specifically defined to the jury." *State v. Severns, supra* at 549. In the instant case, the jury returned a special verdict in connection with count 1 (and in connection with the other three counts) that Nicholas was "armed with a deadly weapon at the time of the commission of the crime . . ." The jury was instructed that the State had to prove this fact beyond a reasonable doubt. In light of these circumstances, there is no possibility that Nicholas was impermissibly convicted on the basis of RCW 9A.56.200(1)(b).

Nicholas next contends that the trial court erred in giving instruction 8, the "to convict" instruction for count 4, the robbery of the liquor store on May 2, 1987. Nicholas contends that his constitutional right to a unanimous jury verdict was denied because the information charged that he had robbed two named clerks, but the jury was instructed that it could find Nicholas guilty if he took property from the person or in the presence "of another." Because both clerks testified, Nicholas reasons, the referent of "another" was ambiguous or confusing and permitted a nonunanimous verdict in which some jurors may have concluded that

Nicholas robbed one clerk while other jurors found he robbed the second clerk.

■ No exception was taken to the giving of instruction 8. Here, too, even assuming that this issue is truly of constitutional magnitude, the error, if any, was harmless beyond a reasonable doubt. The two clerks identified Nicholas as the robber, both in court and in unchallenged photo montages. Their accounts of Nicholas' actions in the back room of the liquor store were essentially identical. Whether both clerks were robbed was not in dispute; the sole issue was the identity of the robber. In light of the evidence presented at trial, the jury could not have had a reasonable doubt about the victims of the robbery. The error, if any, in the formulation of instruction 8 was harmless beyond a reasonable doubt.

*State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980), relied upon by appellant, is inapposite. In *Stephens,* the defendant was charged with assaulting "A *and* B," but an instruction permitted conviction if the jury found that the defendant assaulted "A *or* B." Unlike the instant case, the evidence in *Stephens* permitted a reasonable jury to disagree whether the defendant assaulted both victims. *Cf. State v. Kitchen,* 110 Wn.2d 403, 410, 756 P.2d 105 (1988).

Judgment affirmed.

WEBSTER and PEKELIS, JJ., concur.

Review denied at 113 Wn.2d 1030 (1989).