# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75735-1-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| RICHARD DANIEL ARGO, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: May 29, 2018 |
|  | ) |  |

Cox, J. — Richard Argo appeals his judgment and sentence based on convictions for first degree robbery, first degree theft, and first and second degree assault. He argues that his convictions for robbery and burglary must be set aside because the jury instructions were broader than the charging document. Thus, he claims that he was convicted of uncharged crimes and deprived of his right to a unanimous jury. Because any variances between the charging document and the jury instructions were harmless beyond a reasonable doubt, we disagree.

For the first time on appeal, he also challenges the adequacy of the jury instructions on unanimity. On this record, we reject this claim.

Finally, he claims that the trial court abused its discretion by declining to merge his robbery and burglary convictions in calculating his offender score at sentencing. The trial court did not abuse its discretion in this respect. And Argo's counsel did not provide ineffective assistance of counsel in connection with this claim.

We affirm in all respects.

In December 2011, Argo, Louis Crawford, and three other accomplices decided to rob Kathryn Wetzler. According to Crawford, Wetzler had drugs and cash in a bank-deposit bag in her mobile home. Argo, Kristina McDonald, and Derek Donnelly forced their way into Wetzler's mobile home. Once inside, Donnelly stabbed and struck Wetzler while Argo guarded the exit. Donnelly demanded Wetzler's "money bag." Her housemate, Martha Mills, found the bag hidden between the cushions on the couch. As Mills grabbed the bag, Donnelly stabbed her in the face and back. Mills threw the bag at Argo, who was at the door of the mobile home. Argo and Donnelly took the bag and fled.

Mills suffered multiple stab wounds to her mouth and back and a collapsed lung. Wetzler had a punctured cheek, broken bones in her face, five broken ribs, and internal bleeding, including a subdural hematoma.

After making several stops, Crawford, Argo, and the other three accomplices divided up the items found in the bag. The items included $800, some jewelry, and a "bit" of heroin.

The State charged Argo with first degree robbery, first degree burglary, and two counts of first degree assault, alleging that all four crimes were

committed with a deadly weapon. His accomplices were also charged, but they accepted plea agreements that included testifying truthfully against Argo at trial. Argo testified in his own defense and denied any involvement in the crimes.

The jury convicted Argo on all counts except first degree assault against Wetzler. It found by special verdict that Argo committed all three first degree crimes while armed with a deadly weapon. It convicted Argo of second degree assault against Wetzler without possession of a deadly weapon.

At sentencing, the trial court vacated the second degree assault conviction, merging it with the first degree robbery conviction. The court declined to merge the robbery and burglary convictions.

Argo appeals.

## CONVICTION OF UNCHARGED CRIMES

Argo argues that his convictions for first degree burglary and first degree robbery must be reversed. This is based on variances between the charging document and the jury instructions. The charging document names a particular victim. The instructions do not. Thus, Argo claims that it was possible for the jury to convict him of uncharged crimes and deprive him of his constitutional right to a unanimous jury. Because these variances were harmless beyond a reasonable doubt, we disagree.

"[T]he sixth amendment to the United States Constitution and article 1, section 22 of the Washington Constitution guarantee criminal defendants the right to be informed of the nature of the charges against them."[1] Thus, "[i]t is a

---

[1] State v. Moton, 51 Wn. App. 455, 458–59, 754 P.2d 687 (1988).

No. 75735-1-I/4

well-settled rule in this state that a party cannot be convicted for an offense with which he was not charged."[2] And, "when an information alleges only one crime, it is constitutional error to instruct the jury on a different, uncharged crime."[3]

Article 1, section 21 of the Washington Constitution also guarantees criminal defendants the right to jury unanimity.[4] It is constitutional error if the instructions allow the defendant to be convicted without a unanimous jury verdict.[5]

A constitutionally erroneous instruction "is presumed prejudicial unless it affirmatively appears that the error was harmless."[6] "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error."[7] And the State has the burden to prove that the error was harmless beyond a reasonable doubt.[8]

In the amended information, Argo was charged with first degree robbery based upon allegations that:

_____

[2] State v. Garcia, 65 Wn. App. 681, 686, 829 P.2d 241 (1992).

[3] State v. Kirwin, 166 Wn. App. 659, 669, 271 P.3d 310 (2012).

[4] State v. Woodlyn, 188 Wn.2d 157, 162-63, 392 P.3d 1062 (2017); Moton, 51 Wn. App. at 458.

[5] State v. Kitchen, 110 Wn.2d 403, 410, 756 P.2d 105 (1988).

[6] State v. Jain, 151 Wn. App. 117, 121, 210 P.3d 1061 (2009).

[7] Id. at 121-22 (quoting State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985)).

[8] Guloy, 104 Wn.2d at 425.

4

together with another, . . . on or about December 4, 2011, [he] did unlawfully and with intent to commit theft take personal property of another, to wit: U.S. Currency, jewelry and drugs, *from the person and in the presence of Kathryn Susan Wetzler*, who had an ownership, representative, or possessory interest in that property, against her will, by the use or threatened use of immediate force, violence and fear of injury to such person or her property and to the person or property of another, and in the commission of and in immediate flight therefrom, [Argo] and another participant in the crime *inflicted bodily injury on Kathryn Susan Wetzler*.[9]

The amended information also alleged that Argo and Donnelly were armed with a deadly weapon during the commission of the crime.[10]

The trial court instructed the jury that to convict Argo of first degree robbery, the State had to prove beyond a reasonable doubt that:

(1)     [O]n or about December 4, 2011, [Argo] or an accomplice unlawfully took personal property from the person or in the presence *of another*;
(2)     That the person from whom or in whose presence the property was taken had an ownership, representative, or possessory interest in that property;
(3)     That [Argo] or an accomplice intended to commit theft of the property;
(4)     That the taking was against the person's will by [Argo's] or an accomplice's use or threatened use of immediate force, violence or fear of injury to that person or to that person's property or to the person or property of another;
(5)     That force or fear was used by [Argo] or and [sic] accomplice to obtain or retain possession of the property or to prevent or overcome resistance to the taking;
(6)     *(a) That in the commission of these acts or in immediate flight therefrom [Argo] or an accomplice was armed with a deadly weapon or (b) That in the commission of these acts or in immediate flight therefrom [Argo] or an accomplice displayed what appeared to be a firearm or other deadly weapon or (c) That the commission of these acts or in immediate flight therefrom [Argo] or an accomplice inflicted bodily injury;* and

---

[9] Clerk's Papers at 21 (emphasis added).

[10] Id.

(7)     That any of these acts occurred in the State of Washington.[11]

The jury was further instructed that it "need not be unanimous as to which alternatives 6(a), 6(b) or 6(c), has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt."[12]

As to first degree burglary, the amended information alleged that Argo:

together with another, . . . on or about December 4, 2011, did enter and remain unlawfully in a building located at 2200 NE 88th Street, . . . with intent to commit a crime against a person or property therein, and in entering, and while in such building and in immediate flight therefrom, [Argo] and another participant in the crime was armed with a deadly weapon and *did assault a person, to-wit: Kathryn Susan Wetzler.*[13]

The amended information also alleged that Argo and Donnelly were armed with a deadly weapon during the commission of the crime.[14]

The trial court instructed the jury that to convict Argo of first degree burglary, it had to find beyond a reasonable doubt that:

(1)     [O]n or about December 4, 2011, [Argo] or an accomplice unlawfully entered a building;
(2)     That the entering was with intent to commit a crime against a person or property therein;
(3)     That in so entering or while in the building or in immediate flight from the building [Argo] or an accomplice in the crime charged was armed with a deadly weapon or assaulted *a person*; and

---

[11] Id. at 146-47 (emphasis added); see WPIC 37.02.

[12] Clerk's Papers at 147.

[13] Id. at 22 (emphasis added).

[14] Id.

(4)    That any of these acts occurred in the State of Washington.[15]

Argo claims that because the amended information identified Wetzler as the victim of the first degree robbery and burglary crimes, the jury had to unanimously find that Wetzler, not Mills, was the victim of those crimes. He argues that, because the jury instructions failed to specifically identify Wetzler as the victim, he could have been convicted of crimes not charged—robbery and burglary with Mills as the victim. And he argues that his constitutional right to a unanimous jury was violated because the jury did not have to be unanimous as to whether Wetzler or Mills was the victim of the robbery and burglary.

We assume, without deciding, that these variances between the charging document and the instructions rise to the level of constitutional claims. Nevertheless, we conclude the variances are harmless beyond a reasonable doubt.

State v. Nicholas is instructive.[16] There, Duane Nicholas was charged with four counts of first degree robbery while *armed* with a deadly weapon.[17] On count one, the jury was instructed that it could convict Nicholas if it found that he was either *armed* with a deadly weapon or *displayed what appeared* to be a firearm or deadly weapon.[18] Nicholas claimed that his first degree robbery

_____

[15] Id. at 156 (emphasis added); see WPIC 60.02.

[16] 55 Wn. App. 261, 776 P.2d 1385 (1989).

[17] Id. at 262-63 (emphasis added).

[18] Id. at 272 (emphasis added).

7

conviction had to be reversed because the jury was instructed on an alternative means that was never charged—that he committed the crime while displaying what appeared to be a firearm or deadly weapon.[19]

This court recognized that the instruction "erroneously submitted to the jury the uncharged alternative means of committing first degree robbery."[20] It then held that even assuming the error was of "constitutional magnitude it was harmless beyond a reasonable doubt."[21]

The error was harmless beyond a reasonable doubt because the jury had found by special verdict "that Nicholas was 'armed with a deadly weapon at the time of the commission of the crime.'"[22] Because "[t]he jury was instructed that the State had to prove this fact beyond a reasonable doubt, . . . there [was] no possibility that Nicholas was impermissibly convicted on [the uncharged alternative]."[23]

As to count four, Nicholas argued that his constitutional right to a unanimous jury verdict was violated because the information charged him with robbing two named clerks but the jury was instructed that it could convict Nicholas if he took the property "from the person or in the presence 'of

---

[19] Id.

[20] Id. at 273.

[21] Id.

[22] Id.

[23] Id.

another.'"[24] He argued that some jurors may have found that he robbed one clerk while others found that he robbed the other.[25]

This court again held that "even assuming that this issue is truly of constitutional magnitude, the error, if any, was harmless beyond a reasonable doubt."[26] Both clerks identified Nicholas as the robber, their accounts were virtually identical, whether both clerks were robbed was not in dispute, and "the sole issue was the identity of the robber."[27] Thus, the jury could not have had a reasonable doubt about the victims of the robbery.[28]

First degree robbery is an alternative means crime because it may be committed by a defendant who is armed with or displays a deadly weapon or a defendant who inflicts bodily harm.[29] In the amended information, the State alleged that Argo committed first degree robbery while armed with a deadly weapon. The court's instructions to the jury mirrored this allegation of the State. In the special verdict, the jury unanimously found that Argo committed the crime while using a deadly weapon. Thus, it is clear that the jury unanimously convicted him based on this means whether or not it found that Argo also inflicted

---

[24] Id.

[25] Id. at 273-74.

[26] Id. at 274.

[27] Id.

[28] Id.

[29] RCW 9A.56.200; see In re Pers. Restraint of Brockie, 178 Wn.2d 532, 535, 309 P.3d 498 (2013).

bodily harm. Therefore, the failure to identify a victim in the jury instructions was harmless beyond a reasonable doubt.

First degree burglary is also an alternative means crime because it can be based on a defendant's actions of assaulting a person while committing burglary or being armed with a deadly weapon while committing the burglary.[30] In the amended information Argo was charged with committing the burglary while being armed with a deadly weapon. The court's instructions to the jury mirrored this allegation. The jury then found by special verdict that Argo or an accomplice was armed with a deadly weapon when Argo committed the crime of burglary. Because the jury unanimously found that Argo committed the burglary while armed with a deadly weapon, whether or not it also found that Argo assaulted anyone, the failure of the jury instructions to identify a victim of the burglary was harmless beyond a reasonable doubt.

Finally, the amended information charged Argo with committing two counts of assault during the robbery, one against Wetzler and one against Mills. The jury unanimously found that Argo committed both crimes. So, as in Nicholas, the jury could not have a reasonable doubt that both Wetzler and Mills were victims of the robbery.[31]

---

[30] See RCW 9A.52.020(1); State v. Williams, 136 Wn. App. 486, 498, 150 P.3d 111 (2007).

[31] See 55 Wn. App. at 274.

We also affirm because Wetzler's identity as a victim of the robbery and burglary was superfluous information in the charging document that did not need to be repeated in the jury instructions.

"An information must state all the essential statutory and nonstatutory elements of the crimes charged."[32] But any surplus language in the information may be disregarded.[33] The surplus language is not an element of the crime so it need not be proved unless it is repeated in the jury instructions or the defendant is somehow prejudiced by the inclusion of that language.[34]

"[T]he unit of prosecution for robbery is each separate forcible taking of property from or from the presence of a person having an ownership, representative, or possessory interest in the property, against that person's will."[35] There may only be one single count for each taking even if a number of people are put in fear.[36] Thus, "[p]roof of robbery does not require the specific identity of the victim or victims" and the victim's name is not an element of the

---

[32] State v. Tvedt, 153 Wn.2d 705, 718, 107 P.3d 728 (2005) (internal citations omitted).

[33] Id.

[34] Id.

[35] Id. at 714-15.

[36] State v. Kier, 164 Wn.2d 798, 812, 194 P.3d 212 (2008).

crime.[37] Likewise, the unit of prosecution for burglary is each illegal entry regardless of the number of people inside.[38]

State v. Tvedt is instructive.[39] Ronald Tvedt was charged with 12 counts of first degree robbery, and two of those counts were based on taking cash from two different locations.[40] The information alleged that Tvedt took the cash from or from the presence of two named persons at each location.[41] However, identifying one person at each location was sufficient to state the elements of the offenses charged.[42] The names of the additional people could be disregarded as surplusage.[43] Here, even if the amended information had specifically identified both Wetzler and Mills, that information would have been surplusage.

Argo claims that State v. Kier[44] supports his argument that the discrepancies between the amended information and the jury instructions violated his right to a unanimous verdict. This is incorrect.

In Kier, Herbert John Kier was convicted of first-degree robbery for carjacking a vehicle from the driver Qualagine Hudson, and his passenger,

---

[37] Id.; see State v. Levy, 156 Wn.2d 709, 722, 132 P.3d 1076 (2006).

[38] State v. Brooks, 113 Wn. App. 397, 399-400, 53 P.3d 1048 (2002).

[39] 153 Wn.2d 705, 107 P.3d 728 (2005).

[40] Id. at 708-09, 718-19.

[41] Id. at 718-19.

[42] Id. at 719

[43] Id.

[44] 164 Wn.2d 798, 194 P.3d 212 (2008).

Carlos Ellison.[45] He was also convicted of second degree assault for pointing a gun at Ellison.[46] He was not charged with assaulting Hudson. The criminal information named both Hudson and Ellison as victims of the robbery, and the to convict instruction required the jury to find that Kier took personal property from "the person or in the presence of another."[47]

The supreme court noted that, because the prosecution unit for robbery is a single taking regardless of how many victims are placed in fear of harm, "whether the robbery victim was Hudson or Ellison, or both, was not essential to Kier's conviction."[48] But, because the jury heard evidence describing both Hudson and Ellison as victims of the robbery and the instruction did not specify a victim, the basis for Kier's conviction was ambiguous.[49] If the jury based its first degree robbery conviction on a finding that Kier assaulted Ellison, the second degree assault conviction would merge into the robbery conviction.[50] If the jury based the robbery conviction on a finding that Kier assaulted Hudson, the second degree assault conviction with Ellison as the victim could be upheld.[51] Because

---

[45] Id. at 802-03.

[46] Id.

[47] Id. at 803, 808.

[48] Id. at 812.

[49] Id. at 812-13.

[50] Id. at 813-14.

[51] Id.

13

the basis for conviction was not clear, Kier's conviction for second degree assault had to be reversed.[52]

As in Kier, we may affirm Argo's first degree robbery conviction because for purposes of that conviction, it is not relevant whether Wetzler or Mills was the victim of that crime.[53] And, consistent with Kier, the trial court here merged Argo's conviction for second degree assault into the first degree robbery conviction.

Argo also argues that State v. Brown[54] and State v. Jain,[55] support his claim that the jury could have wrongfully convicted him of uncharged crimes, but neither case is persuasive. In Brown, Stanley Christiansen challenged his conviction for criminal conspiracy to commit first degree theft.[56] The information named 12 co-defendants who were involved in the conspiracy, but the jury was instructed that it only had to find that Christiansen conspired with "one or more persons."[57] Because several uncharged witnesses had testified to their involvement in the conspiracy, this court reversed Christiansen's convictions.[58] This court reversed because conspiracy requires an agreement, and

---

[52] Id.

[53] See id. at 812.

[54] 45 Wn. App. 571, 726 P.2d 60 (1986).

[55] 151 Wn. App. 117, 210 P.3d 1061 (2009).

[56] 45 Wn. App. at 572.

[57] Id. at 572-73, 576.

[58] Id. at 576-77.

14

Christiansen could have been convicted based on an agreement with persons who were not identified in either the charging documents or the instructions. [59]

Unlike Brown, Argo could not have been convicted of offenses against victims that were never identified in either the amended information or instructions. State v. Garcia is instructive.[60] There, the amended information charged Roberto Garcia with delivering a controlled substance to Officer C.W. Trebesh while the evidence at trial indicated that Garcia had delivered it to a "Mr. Rutherford."[61] The jury instructions required the jury to only find that Garcia "delivered a controlled substance."[62]

Garcia argued that his due process rights were violated because he was convicted of a crime not charged in the information.[63] This court disagreed.[64] It determined that the error was merely technical in part because Garcia had full notice of the charges against him.[65] This court distinguished Brown in part because Garcia did not rely on the incorrect information that stated that he had made the delivery to Officer Trebesh.[66] Also, Garcia was charged with only one

---

[59] Id. at 576.

[60] 65 Wn. App. 681, 829 P.2d 241 (1992).

[61] Id. at 684-85.

[62] Id. at 685.

[63] Id. at 685-86.

[64] Id. at 686.

[65] Id.

[66] Id. at 688.

15

delivery while Christiansen was charged with entering into agreements with a number of persons.[67] It was beyond a reasonable doubt that the jury convicted Garcia for his delivery to Rutherford because there was no conflicting evidence regarding a delivery to any other party.[68]

Likewise here, Argo was charged with, and convicted of, one robbery and one burglary. And he was fully aware that the robbery and burglary charges arose out of actions involving both Wetzler and Mills. Both women were identified as victims of assault in the charging document and the jury unanimously found Argo guilty of assaulting both women during the robbery. Moreover, Argo took Wetzler's property while it was in Mills' possession,[69] and his defense was that he did not participate in the crimes, and he was not even present in the mobile home. Therefore, any error in failing to name the victims in the jury instructions in no way prejudiced his defense.[70]

Jain is similarly distinguishable. A drug task force had investigated Yatin Jain for spending significantly more than could be traced to his legitimate income including his purchase of various properties.[71] He was charged with money

---

[67] Id. at 687-88.

[68] Id. at 688.

[69] See Tvedt, 153 Wn.2d at 718-19; State v. Rupe, 101 Wn.2d 664, 693, 683 P.2d 571 (1984).

[70] See Garcia, 65 Wn. App. at 688.

[71] Jain, 151 Wn. App. at 120-21.

laundering based on his purchase of two pieces of unimproved property.[72] At trial, the State introduced evidence of five other properties that he had purchased that were not identified in the information.[73] The jury was instructed that it could convict Jain on each money laundering count upon finding that Jain "conducted a financial transaction" involving "proceeds of specified unlawful activity."[74] This court reversed Jain's convictions for two counts of money laundering because Jain could have been convicted based upon transactions involving properties that were never named in the information.[75]

Unlike Jain, Argo was charged with, and the jury unanimously decided that Argo committed, only one act of first degree robbery and one act of first degree burglary.

## UNANIMITY DURING JURY DELIBERATIONS

Argo argues for the first time on appeal that the trial court erred in failing to instruct the jury that it could only deliberate when all twelve jurors were present. Because this claimed error is not manifest under RAP 2.5(a), we decline to consider it.

Article 1, section 21 of the Washington constitution guarantees criminal defendants the right to a unanimous jury verdict.[76] An essential part of that right

---

[72] Id. at 121.

[73] Id. at 123.

[74] Id.

[75] Id. at 124.

[76] Woodlyn, 188 Wn.2d at 162-63.

17

is that the jury deliberations leading to a unanimous verdict be "the common experience of all [jurors]."[77]

This court reviews de novo whether Argo was denied his constitutional right to a unanimous jury.[78]

Under RAP 2.5(a)(3), a party may raise, for the first time on appeal, a manifest error affecting a constitutional right. In order to claim a manifest error affecting a constitutional right, the party "must identify the constitutional error and show that it actually affected his or her rights at trial."[79] This requires the party to "make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial."[80] "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest."[81]

After the jury was seated, the trial court instructed it that "[u]ntil you are in the jury room for those deliberations, you must not discuss the case with the other jurors or with anyone else or remain within hearing of anyone discussing

---

[77] State v. Lamar, 180 Wn.2d 576, 585, 327 P.3d 46 (2014) (quoting People v. Collins 17 Cal.3d 687, 693, 552 P.2d 742, 131 Cal. Rptr. 782 (1976)).

[78] State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017).

[79] Lamar, 180 Wn.2d at 583.

[80] Id.

[81] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

it."[82] Then, before the parties' closing arguments, the trial court instructed the jury that:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.[83]

The jury was also instructed on how to initiate and carry out the deliberative process and that each juror had a right to be heard.

Argo argues that these instructions were insufficient to guarantee unanimity. He contends that the trial court should have informed the jury at each recess not to discuss the case between themselves or with any other persons. He further argues that the trial court should have instructed the jury after closing arguments of its constitutional duty to deliberate only when all 12 jurors were present. He argues that in the absence of such instruction, "there is no valid basis to assume the verdicts rendered were the result of 'the common experience of all of [the jurors],' which our State constitution requires."[84]

---

[82] Report of Proceedings (May 17, 2016) at 181.

[83] Clerk's Papers at 133.

[84] Appellant's Opening Brief at 32 (quoting Lamar, 180 Wn.2d at 585).

This court recently rejected this argument in State v. Sullivan.[85] This court observed that RAP 2.5(a) precluded Kevin Sullivan "from raising this issue for the first time on appeal unless he c[ould] show that failure to provide the additional instruction [was] a 'manifest error affecting a constitutional right.'"[86] This court further observed that "[f]or an error to be manifest, there must be evidence of 'actual prejudice' having 'practical and identifiable consequences [at] trial.'"[87]

The court then considered Sullivan's argument and determined that he had offered "no evidence that the jury failed to deliberate as a whole."[88] Instead, he relied "entirely on speculation."[89] The court held that such speculation was "'insufficient to warrant review under RAP 2.5(a)(3).'"[90]

Here, although Argo argues that "[i]t is safe to assume one or more jurors left the jury room [at some point] during deliberations, [at least] to use a bathroom,"[91] there is nothing in this record to support this assumption. Because "the facts necessary to adjudicate the claimed error are not in the record on

---

[85] No. 76358-0-1 (Wash. Ct. App. April 30, 2018).

[86] Id. at 2-3 (quoting RAP 2.5(a)(3)); see Lamar, 180 Wn.2d at 583.

[87] Sullivan, slip. op. at 3 (quoting State v. O'Hara, 167 Wn.2d 91, 98-99, 217 P.3d 756 (2009)).

[88] Id. at 4.

[89] Id.

[90] Id. (quoting State v. St. Peter, 1 Wn. App.2d 961, 963, 408 P.3d 361 (2018)).

[91] Appellant's Opening Brief at 35.

appeal, no actual prejudice is shown and the error is not 'manifest.'"[92] As in Sullivan, "without evidence to demonstrate that the jury did not deliberate as a whole, the asserted error is not manifest."[93]

Therefore, we decline to address Argo's argument for the first time on appeal under RAP 2.5(a)(3).

Argo further argues that even if he cannot show prejudice, reversal is still warranted because "[t]he failure to instruct a jury in a criminal trial how to achieve constitutional unanimity constitutes structural error for which reversal is required without the need to show actual prejudice."[94] The problem with this argument is that it assumes we reach the merits of this claim. Because we do not reach the merits, we need not address this structural error claim.

## SENTENCING

Argo argues that the trial court abused its discretion by failing to recognize or consider the possibility of merging his robbery and burglary convictions as the same criminal conduct for purposes of his offender score at sentencing. The court did not abuse its discretion.

Under the general rule set forth in RCW 9.94A.589(1)(a), "whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior

---

[92] Sullivan, slip. op. at 3 (quoting McFarland, 127 Wn.2d at 333).

[93] Id. at 5.

[94] Appellant's Opening Brief at 36-39; see State v. Wise, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012).

convictions as if they were prior convictions for the purpose of the offender score." But, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those offenses shall be counted as one crime."[95]

If one of the current offenses is burglary, the burglary antimerger statute applies which provides that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."[96] Under the antimerger statute, a sentencing court has the discretion to count both a conviction for burglary and a conviction for another crime committed during a burglary toward the defendant's offender score even if those crimes encompass the same criminal conduct.[97]

This court reviews for abuse of discretion the trial court's determination of same criminal conduct and its calculation of the offender score.[98]

A trial court abuses its discretion if it "categorically refus[es]" to exercise its discretion or fails to recognize that it has discretion.[99] Abuse of discretion means that no reasonable judge would have ruled the way the trial court did.[100]

___

[95] RCW 9.94A.589(1)(a).

[96] RCW 9A.52.050.

[97] See State v. Lessley, 118 Wn.2d 773, 781-82, 827 P.2d 996 (1992).

[98] See Id. at 780-81.

[99] State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

[100] State v. Arredondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017)

22

During the first sentencing hearing on June 29, 2016, the parties and trial court mostly discussed Argo's request to merge the first degree assault and robbery convictions. The State argued that only the second degree assault conviction should merge with the robbery, and the trial court asked for additional briefing on this issue.

The parties also addressed whether the trial court should exercise its discretion and merge the first degree robbery and burglary convictions as the same criminal conduct. The State urged the trial court to apply the antimerger statute and not merge the convictions because of the multiple acts of violence inside of the mobile home. The State recited the antimerger statute, and argued at length why the robbery and burglary were two discrete offenses and should be scored as two.

The trial court wondered how the two crimes could be considered as separate courses of conduct. It then asked the State what Argo's offender score would be if the robbery and burglary convictions were merged as the same criminal conduct. The State responded that the score would drop from six to four, but there would still be a weapon enhancement on each charge. It informed the trial court that it would seek the same prison term given the severity of the crimes. Specifically, if the offender score was four instead of six, the range for first degree assault would drop from 129 to 171 months instead of 162 to 216 months. The sentence for burglary would not change because it would be served concurrently with the first degree assault except for the 24 month firearm enhancement which would stay the same. The trial court then noted that the

23

State was recommending 162 months, the lower end if Argo's offender score was six and the upper end if it was four.

Defense counsel then urged the court to exercise its discretion, merge the charges, and not apply RCW 9A.52.050. He reminded the court that Donnelly, not Argo, had injured the victims.

The trial court noted that even if the burglary and robbery counts merged, the effect on the sentence would be minimal because of the deadly weapon enhancements. It indicated it would take everything "under advisement" and set over sentencing.

At the second sentencing hearing on August 29, 2016, defense counsel agreed with the State that only the second degree assault conviction could merge with robbery.[101] The State then advised the trial court that Argo had an offender score of six for the three remaining convictions—first degree robbery, first degree burglary, and first degree assault.

The State recommended that the trial court impose the low end of the standard range for each offense totaling 234 months of incarceration. Defense counsel replied that, in light of this low end recommendation, he would recommend that as well. He also reminded the trial court that Argo did not personally harm anyone and had had no history of violence.

The trial court recognized Argo's limited role, but also observed that this is "the risk you take when you hook up with people like [Donnelly]," he didn't need to stab the "two elderly ladies" and "you were there and were playing a part in

_____

[101] See State v. Freeman, 153 Wn.2d 765, 778, 108 P.3d 753 (2005).

that, no matter how small of a role."[102] It considered the letters written on Argo's behalf, and the defense's presentence and amended presentence reports. It then concluded that it "was pleased that the State was asking for the low end because that had been my thoughts before this . . . hearing . . . and I think that's entirely appropriate to impose for each count the low end of each one."[103]

The trial court vacated the second-degree assault conviction and, based on an offender score of six, imposed the low-end standard sentence range for each remaining count and 72 months in deadly weapon enhancements for a total sentence of 234 months.

Argo argues that because the issue of whether the trial court should exercise its discretion to merge the burglary and robbery convictions was never discussed during the second sentencing hearing, the trial court forgot about that possibility. He argues that, had the court remembered, there was a "reasonable probability" it would have exercised its discretion and merged those crimes for purposes of sentencing. This record does not support this argument.

The record shows that the trial court exercised its discretion in considering whether to merge the robbery and burglary convictions for purposes of Argo's offender score. At the first sentencing hearing, it considered the impact of applying the antimerger statute and the State's position that its recommendation as to sentencing would be the same either way. At both sentencing hearings, the trial court considered Argo's involvement in the crimes, and the appropriate

---

[102] Report of Proceedings (August 29, 2016) at 1677.

[103] Id. at 1678.

sentence given that involvement. It provided reasons for agreeing with the State not to merge the robbery and burglary convictions but to impose a sentence at the bottom of the higher range.

Argo relies on In the Matter of the Personal Restraint of Mulholland as support for his contention that the trial court failed to recognize and act on its discretion to disregard RCW 9A.52.050 and merge the robbery and burglary convictions.[104] His reliance is misplaced.

There, Daniel Mulholland was convicted of six counts of first degree assault.[105] The trial court ordered that all of Mulholland's first degree assault sentences be served consecutively and expressly concluded that it lacked discretion to impose concurrent sentences.[106] The supreme court granted Mulholland's personal restraint petition and remanded for resentencing because the trial court failed to recognize that it had the discretion to impose concurrent sentences.[107]

Here, there is no such error because the trial court sentenced Argo after being advised that it had the discretion to decide whether to count the robbery and burglary convictions as one crime for purposes of the offender score. The record also shows the court took into consideration whether to merge the two and decided not to do so.

---

[104] 161 Wn.2d 322, 166 P.3d 677 (2007).

[105] Id. at 324.

[106] Id. at 324, 326.

[107] Id. at 334-35.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Argo argues that his trial counsel was ineffective for failing to re-raise the issue of merging his robbery and burglary convictions at the second sentencing hearing. This claim is without merit.

To prevail on an ineffective assistance of counsel claim, the defendant must show both deficient performance and resulting prejudice.[108] Performance is deficient if it falls "below an objective standard of reasonableness."[109] Deficient performance is not shown by matters that go to trial strategy or tactics, and this court presumes counsel's performance was reasonable.[110]

To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's error, the result would have been different."[111]

This court reviews de novo whether a defendant received ineffective assistance of counsel.[112]

Argo acknowledges that the trial court was on notice after the first hearing that he wanted it to exercise its discretion to merge the burglary and robbery convictions. But he argues that his trial counsel was ineffective in failing to re-argue for merger at the time of the second hearing. He argues there was "no

---

[108] State v. Townsend, 142 Wn.2d 838, 843, 15 P.3d 145 (2001).

[109] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[110] Id. at 33-34.

[111] Townsend, 142 Wn.2d at 844.

[112] See State v. Cross, 156 Wn.2d 580, 605, 132 P.3d 80 (2006).

reasonable strategic basis for defense counsel not to argue in favor" of merger at the second hearing. He is wrong.

During the first sentencing hearing, the issue of whether to merge the robbery and burglary convictions was fully addressed by both parties. And the State told the trial court that it would seek the same sentence whether or not the robbery and burglary counts merged. Argo's counsel could have made the strategic decision not to continue to seek merger given the State's recommendation. Thus, Argo has failed to establish that the failure to repeat arguments previously made at the first hearing "fell below an objective standard of reasonableness under professional norms."[113]

Argo further argues that counsel's deficient performance prejudiced him. He claims that had counsel raised the issue of merger at the second hearing, the court would have exercised its discretion to disregard RCW 9A.52.050 and merge the burglary and robbery convictions. Because Argo failed to show that his counsel was deficient, we need not need address his arguments regarding prejudice.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

_Spearman, J._  _Leach, J._

---

[113] Townsend, 142 Wn.2d at 843-44.